**Eugene MILLER, Appellant,**

**v.**

**UNITED STATES DEPARTMENT OF AGRICULTURE; Animal and Plant Health Inspection Service; James W. Glosser, Administrator, Appellees.**

No. 92–2210.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1992.

Decided Dec. 17, 1993.

---

Ronald A. Wager, Aberdeen, SD, argued (Kennith L. Gosch, on the brief), for appellant.

Bonnie P. Ulrich, Sioux Falls, SD, argued (Kevin V. Schieffer and Bonnie P. Ulrich, on the brief), for appellee.

Before McMILLIAN, BOWMAN, and LOKEN, Circuit Judges.

BOWMAN, Circuit Judge.

Eugene Miller filed a complaint against the United States Department of Agriculture (USDA) under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1988), seeking disclosure of certain documents. The USDA claimed the documents Miller sought were exempt from disclosure under 5 U.S.C. § 552(b)(7)(A) as having been compiled for law enforcement purposes. The District Court granted summary judgment in favor of the agency, and Miller appeals. We reverse and remand.

Miller, a Nebraska rancher, was involved in the purchase of cattle shipped from New Mexico to Nebraska in April 1987. Inspection of the cattle revealed alleged violations of the federal brucellosis control program. 21 U.S.C. §§ 111, 120 (1988); 9 C.F.R. pt. 78. Miller contends he had no knowledge that any of the cattle he bought were infected with brucellosis, and that he was duped by the sellers. Walter Waddell, Area Investigator, Veterinary Services (VS), Animal and Plant Health Inspection Service (APHIS), provided an investigative report (the Waddell report) to APHIS on October 27, 1987, concerning the cattle transfer.

On November 25, 1987, Gustavo Rivera, acting for Arthur J. Wilson, Director, Compliance and Enforcement Program, VS, APHIS, USDA, transmitted a memorandum (the Wilson memorandum) with a copy of the Waddell report to Ronald J. Cipolla, Assistant General Counsel, Regulatory Division, Office of the General Counsel, USDA. (The Wilson memorandum is a summary of the Waddell report.) The Office of the General Counsel to the USDA determines whether an investigative report details sufficient evidence of a violation to necessitate preparing and filing a civil complaint. If the evidence supports criminal prosecution, the case is forwarded to the United States Department of Justice.

On February 15, 1988, pursuant to the FOIA, Miller sent APHIS a letter requesting "all information," including "a complete copy of Mr. Waddell's file," held by the USDA concerning the cattle transfer. APHIS denied Miller's request on March 14, 1988, and

Miller did not appeal the denial. On November 28, 1989, Miller repeated his request for certain documents from APHIS regarding the cattle transfer. Again APHIS denied the request, and Miller appealed the denial to the Administrator of APHIS. The appeal was denied, and on September 11, 1990, Miller filed this suit in the District Court to compel disclosure of the requested documents under the FOIA.

In the meantime, Jaru Ruley, staff attorney with the Regulatory Division, Office of the General Counsel, USDA, had been assigned the investigative report since December 17, 1987, but he did not review the report until August 15, 1990, and he did not draft a complaint until September 14, 1990—three days after Miller filed this action in the District Court. Based on the complaint drafted by Ruley, the Administrator for APHIS filed an administrative civil complaint against Miller and the other parties to the 1987 cattle transaction, seeking a civil penalty of $1,800 against Miller.

The administrative law judge to whom the administrative complaint was assigned denied Miller's request for the production of the documents in question. Insofar as we are informed, the administrative complaint remains unresolved. Miller's counsel stated at oral argument that Miller has a case pending in state court against the persons who were involved in selling him the infected cattle, and that the state court is holding the case in abeyance until the administrative proceedings are completed.

In the present action, the District Court ordered the government to file a copy of the documents requested by Miller for *in camera* review, after which the court denied both parties' motions for summary judgment. The government filed a renewed motion for summary judgment with supporting affidavits, and the District Court granted this renewed motion.

On appeal, Miller argues that the District Court erred in granting summary judgment because genuine issues of material fact exist as to whether: 1) the Waddell report and the Wilson memorandum were compiled for law enforcement purposes, 2) the disclosure of the Waddell report and the Wilson memoran-

dum would interfere with the administrative enforcement proceedings, and 3) the administrative enforcement proceedings were initiated against Miller in bad faith.

■ We review a grant of summary judgment *de novo*. *United States ex rel. Glass v. Medtronic, Inc.*, 957 F.2d 605, 607 (8th Cir. 1992). The standard of review is the same for us as it was for the trial court: whether the record shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). "Summary judgment is available to the defendant in a FOIA case when the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Miller v. United States Dep't of State*, 779 F.2d 1378, 1382 (8th Cir.1985). To defeat a motion for summary judgment, the nonmoving party "need only present evidence from which a jury might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

■ The purpose of the FOIA is to provide wide-ranging public access to government documents. "Without question, the Act is broadly conceived. It seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *EPA v. Mink*, 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). The FOIA sets out specific statutory exemptions from disclosure, "[b]ut these limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Department of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976). Therefore the exemptions "must be narrowly construed." *Id.* Furthermore, the statute states that, once the complaint reaches the district court, "the burden is on the agency

to sustain its action." 5 U.S.C. § 552(a)(4)(B).

■ Under the FOIA, a governmental agency is not required to disclose "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to interfere with enforcement proceedings." *Id.* § 552(b)(7)(A). Under this exemption, the government must conquer two hurdles before requested documents may be withheld: first, the government must establish that the requested documents were "compiled for law enforcement purposes" and, second, the government must demonstrate that disclosure "could reasonably be expected to interfere with enforcement proceedings." *Id.*

■ Miller argues that the District Court erred in determining there was no genuine issue of fact as to whether the documents requested by Miller were compiled for law enforcement purposes at the time his FOIA requests were denied. We disagree. The government may withhold documents under § 552(b)(7) if it shows that at the time that the FOIA requests were made there was an enforcement proceeding then pending or contemplated. *See NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 230–32, 98 S.Ct. 2311, 2321–22, 57 L.Ed.2d 159 (1978).

The Waddell report and the Wilson memorandum were compiled in October and November 1987. They were assigned to Jaru Ruley, staff attorney at USDA, in December 1987. Miller made his first FOIA request, which was denied, in February 1988. He made his second FOIA request, which was denied, in November 1989. Miller appealed his second denial in March 1990, and the appeal was denied in August 1990. It is undisputed that Ruley did not look at the file until August 1990, and that he issued a complaint on September 14, 1990. We conclude, as did the District Court, there is no genuine issue of material fact as to whether a law enforcement proceeding was pending or at least contemplated when Miller made his FOIA requests. Ruley's tardiness in getting to work on the file cannot alter the conclusion that the file, at the time Miller's FOIA requests were made, contained investigatory records compiled for law enforcement purposes. *See John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 155, 110 S.Ct. 471, 477, 107 L.Ed.2d 462 (1989) ("Under the statute, documents need only have been compiled when the response to the FOIA request must be made.").

■ Miller also argues that even if a law enforcement proceeding was pending or contemplated when he made his FOIA requests, the government has not met its burden of showing that disclosure of the requested documents could reasonably be expected to interfere with enforcement proceedings, and that summary judgment in the government's favor therefore was inappropriate. We find this argument persuasive.

In reaching its conclusion that no genuine issue of fact exists as to the question of interference with enforcement proceedings, the District Court relied on the government's affidavits. Our examination of these affidavits, however, reveals that they are of the boilerplate, conclusory variety. Were we to accept the affidavits submitted in this case as an adequate showing on the interference-with-enforcement-proceedings question, the statute would stand as a universal bar against disclosure, and that is obviously not what Congress intended. We conclude that the government must make a more specific showing of why disclosure of the documents requested here could reasonably be expected to interfere with enforcement proceedings, and that it has not yet done so. *See generally Crancer v. United States Dep't of Justice (In re Department of Justice),* 999 F.2d 1302 (8th Cir.1993) (en banc), *petition for cert. filed,* 62 U.S.L.W. 3350 (U.S. Nov. 3, 1993) (No. 93–700). Accordingly, the case must be remanded for further factual development on this issue.

■ Finally, we consider Miller's argument that, because no enforcement proceedings were instituted from December 1987 until October 1990, and he filed his FOIA complaint in the District Court in September 1990, the enforcement proceedings were instituted in bad faith. To counter this argument, the government submitted affidavits

from the agency employees stating that the enforcement proceedings were instituted independently and without any knowledge of Miller's FOIA complaint, and that the long delay was caused by a backlog of higher priority cases.

The District Court granted summary judgment for the government based on its affidavits. The court stated, "[T]he government's affidavits serve to destroy any inference of bad faith." *Miller v. United States,* No. 90–1034, mem. op. at 11 (D.S.D. Apr. 2, 1992). "The court is entitled to accept the credibility of [such] affidavits, so long as it has no reason to question the good faith of the agency." *Cox v. United States Dep't of Justice,* 576 F.2d 1302, 1312 (8th Cir.1978). In our view, when a report sits on a desk from December 1987 until September 1990, and the attorney assigned to the report drafts an administrative complaint on September 14, 1990, when the FOIA requester filed his FOIA complaint in federal court on September 11, 1990, a question of fact is presented as to the good faith of the agency. In such a situation, the credibility of the government actors is in issue, and we believe it is inappropriate to grant summary judgment based solely on the government's affidavits without any opportunity for the trier of fact to hear, and for the opposing party to cross-examine, the affiants. On this issue, too, the case must be remanded.

For the reasons stated, the District Court's grant of the government's motion for summary judgment is reversed and the case is remanded for further proceedings consistent with this opinion.