# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2218

_____

Missouri Coalition for the Environment  *
Foundation,                             *
                                        *
              Appellant,          *
                                        *   Appeal from the United States
     v.                              *   District Court for the
                                        *   Eastern District of Missouri.
United States Army Corps of Engineers,  *
                                        *
              Appellee.           *

_____

Submitted: January 14, 2008
Filed: September 16, 2008

_____

Before COLLOTON and SHEPHERD, Circuit Judges, and ERICKSON,[1] District Judge.

_____

ERICKSON, District Judge.

     In this action, the Missouri Coalition for the Environment Foundation (the "Coalition") seeks disclosure of a number of documents from the United States Army Corps of Engineers (the "Corps") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The district court granted summary judgment in

_____

[1]The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota, sitting by designation.

favor of the Corps on the basis that the deliberative process privilege, 5 U.S.C. § 552(b)(5), exempts all 83 documents responsive to the request. The Coalition appeals from the judgment and we remand for further proceedings.

## I.

The Corps conducted a study of flood risk and recurrence on the Mississippi, Missouri, and Illinois Rivers known as the Upper Mississippi River System Flow Frequency Study ("UMRSFFS"). This study's purpose was to identify the 100- and 500-year flood plains. The UMRSFFS commenced in 1997 and its results were released in 2004.

In conducting the UMRSFFS, the Corps instituted a task force to oversee and review the study. The task force was divided into two groups – the Technical Advisory Group ("TAG") and the Inter-Agency Advisory Group ("IAG"). The TAG was comprised of subject matter experts from each of the seven states relevant to the study. The IAG similarly included subject matter experts from each of the seven relevant states but also incorporated experts from other federal agencies, including the Federal Emergency Management Agency, the Bureau of Reclamation, the Tennessee Valley Authority, the National Resource Conservation Service, the United States Geological Survey, and the National Weather Service. On behalf of the Corps, Dr. David Goldman coordinated the IAG and TAG consultants. During the course of the study, the TAG and IAG advised the Corps on the methodology to use for the UMRSFFS and reviewed the Corps' preliminary results. These discussions and other communication took place through meetings, written memoranda, and informally through e-mails.

On April 25, 2005, the Coalition submitted a FOIA request to the Corps.[2] The FOIA request solicited three broad categories of documents:

1.     Each and every document that evidences a communication to or from a member of the Flow Frequency Study Technical Advisory Group, regardless of the other party to the communication, relating to the Flow Frequency Study.

2.     All agendas and minutes of meetings of the Flow Frequency Study Technical Advisory Group.

3.     Each and every document that evidences disagreement, dispute or concern about the assumption adopted in the Flow Frequency Study that flood flows have been "independently and identically distributed" (aka the assumption of "stationarity").

The Corps did not provide a written response to the FOIA request; however, representatives from each party communicated by phone. No documents were released pursuant to the request. Subsequently, the Coalition filed the instant case in district court. In its answer to the Coalition's complaint, the Corps asserted the requested documents were subject to a FOIA exemption.

The Corps moved for summary judgment and attached to its motion declarations from Corps employees Thomas Minear and Dr. David Goldman and a Vaughn index identifying 83 documents responsive to the Coalition's FOIA request. The Vaughn index identified each document with general distinguishing information such as the date it was generated, the author, the addressees, and whether the document was a memorandum, e-mail, letter, agenda, or meeting

_____

[2]The Coalition previously submitted a similar request in 2003, before the UMRSFFS was fully completed, and subsequently withdrew the FOIA request in anticipation of the later release of the information.

notes.  A short description was provided for each document (e.g., "E-mail discussing potential methodologies to be used in FFS" or "Letter discussing the FFS analysis methods").  Finally, each and every document was identified as privileged under FOIA Exemption 5, the Deliberative Process Privilege.  The Coalition cross-moved for summary judgment, arguing the Corps had failed to prove that the documents were exempt from disclosure.  Summary judgment was granted in favor of the Corps.

## II.

The Freedom of Information Act is intended "to provide wide-ranging public access to government documents."  Miller v. U.S. Dep't of Agric., 13 F.3d 260, 262 (8th Cir. 1993).  The Act, which permits access "to official information long shielded unnecessarily from public view" is therefore "broadly conceived."  EPA v. Mink, 410 U.S. 73, 80 (1973).

The Act itself provides nine specific statutory exemptions.  5 U.S.C. § 552(b).  These are to be narrowly construed to ensure that disclosure, rather than secrecy, remains the primary objective of the Act.  Miller v. U.S. Dep't of Agric., 13 F.3d at 262 (citing Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976)).  The Deliberative Process Privilege, FOIA Exemption 5, exempts "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  The purpose of the exemption is designed "to ensure that 'open, frank discussions between subordinate and chief' will not be made impossible by the agencies having to 'operate in a fishbowl.'"  Schwartz v. IRS, 511 F.2d 1303, 1305 (D.C. Cir. 1975) (quoting S. Rep. 813, 89th Cong., 1st Sess. (1965)).  The goal of the privilege is clear and straightforward:  to allow full and frank discussion while preserving the goal of an open government.

This Court reviews a district court's grant of summary judgment in a FOIA case *de novo*. Missouri, ex rel. Garstang v. U.S. Dep't of Interior, 297 F.3d 745, 749 (8th Cir. 2002). Our review is the same as it was for the district court: The record is evaluated in the light most favorable to the nonmoving party to determine whether there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Garstang, 297 F.3d at 749 (citing Miller v. U.S. Dep't of Agric., 13 F.3d at 262). In a FOIA case, summary judgment is available to a defendant agency where "the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Miller v. U.S. Dep't of State, 779 F.2d 1378, 1382 (8th Cir. 1985) (citing Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1350 (D.C. Cir. 1983).

The Coalition argues that, viewed in the light most favorable to the Coalition, the Corps' Vaughn index is insufficient to show whether the Corps' obligations under FOIA were discharged. As a result, the Coalition posits, some of the documents should have been released. Alternatively, the Coalition proposes that even if the Vaughn index is adequate, some of the documents – in whole or in part – are not subject to the exemption. The Corps contends that it satisfied its FOIA obligations with an adequate Vaughn index that properly demonstrated the documents were subject to the deliberative process privilege.

Vaughn Indices

To help determine whether a governmental agency has discharged its burden under FOIA, Vaughn indices may be used. Crancer v. Dep't of Justice, 999 F.2d 1302, 1305 (8th Cir. 1993). The Vaughn court recognized the problems associated with FOIA requests for claimed-exempt documentation, including the requesting party's inability to advocate its position in light of its lack of knowledge and the court's difficulty reviewing massive documentation. Vaughn v. Rosen, 484 F.2d

820, 826 (D.C. Cir. 1973). Thus, <u>Vaughn</u> indices serve two purposes: First, to ensure an "effectively helpless" party's right to information "is not submerged beneath governmental obfuscation and mischaracterization" and second, to "permit the court system effectively and efficiently to evaluate the factual nature of disputed information." <u>Id.</u>

This Court has held that a proper <u>Vaughn</u> index

> provides a specific factual description of each document sought by the FOIA requester. Specifically, such an index includes a general description of each document's contents, including information about the document's creation, such as date, time, and place. For each document, the exemption claimed by the government is identified, and an explanation as to why the exemption applies to the document in question is provided.

<u>Crancer</u>, 999 F.2d at 1306 (internal citations and quotations omitted). Such an index allows both the district court and the requesting party to evaluate the decision to withhold records and ensure compliance with FOIA. <u>Barney v. IRS</u>, 618 F.2d 1268, 1272 (8th Cir. 1980). Here, the <u>Vaughn</u> index contained all necessary identifying information and stated the applicable exemption. Although the index itself failed to explain why the exemption applied to each document, the affidavits provided in conjunction with the index indicated that the documents were deliberative – involving "give-and-take," critiques, comments, and recommendations by members of the two groups.

Generally, a more substantial <u>Vaughn</u> index – one that provides for each document requested a specific explanation as to why an exemption applies – is preferable to a bare bones index. Even so, *in camera* review of the documentation in this case was not necessary. <u>Barney</u>, 618 F.2d at 1272. In <u>Barney</u>, we held that "in camera inspection should be limited as it is 'contrary to the traditional judicial role of deciding issues in an adversarial context upon evidence openly produced in court.'" <u>Id.</u> (quoting <u>Cox v. U.S. Dep't of Justice</u>, 576 F.2d 1302, 1311 (8th Cir.

1978)). If the material is fairly described and the reason for nondisclosure is adequately stated and supported by the law, the agency's position should be upheld without *in camera* inspection. Id.

The sworn declarations from Mr. Minear and Dr. Goldman provide adequate additional information to explain why the documents should be exempt. See Miller v. U.S. Dep't of State, 779 F.2d at 1387 (holding that an agency carries its burden of proof by providing affidavits to explain why documents are subject to an exemption). Boilerplate or conclusory affidavits, standing alone, are insufficient to show that no genuine issue of fact exists as to the applicability of a FOIA exemption. Miller v. U.S. Dep't of Agric., 13 F.3d at 263. Even so, a governmental agency can properly "conclude that open and frank intra-agency discussion would be 'chilled' by public disclosure of [a document] generated as part of the agency's deliberative process." Missouri, ex rel. Shorr v. U.S. Army Corps of Engineers, 147 F.3d 708, 711 (8th Cir. 1998).

The affidavits supplied in this case discuss the UMRSFFS process and the nature of the communications between parties. Mr. Minear's affidavit describes the basis for the exemption:

> These communications are exempt from disclosure under Exemption 5 because they are predecisional and part of the deliberative process. They involve the give-and-take that is inherent in such a study process. The documents consist of the TAG members freely critiquing the work of the Corps and other TAG members as the TAG worked over the years to advise the Government regarding the best study process. Release of these documents could deter not only such group members from speaking freely in the future, but also deter Government agencies from empanelling such groups of experts. . . .

(Minnear Aff. p. 3). Considering the identifying information supplied in the Vaughn index and the additional information provided in the affidavits, we cannot conclude that the Vaughn index was, on its face, inadequate under Crancer. 999 F.2d at 1306.

-7-

<u>Deliberative Process Privilege</u>

Whether the <u>Vaughn</u> index and affidavits were themselves adequate, the Coalition argues that the Corps failed to prove it had discharged its obligations under FOIA. The Coalition argues certain categories of documents, such as meeting agendas and documents discussing UMRSFFS methodology or the goals of the committees, could not reasonably be exempt under the deliberative process privilege and should have been disclosed.

The FOIA deliberative process privilege exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5); <u>Shorr</u>, 147 F.3d at 710. The deliberative process exemption permits nondisclosure if the document is both predecisional and deliberative. <u>Shorr</u>, 147 F.3d at 710 (citing <u>Assembly of Cal. v. U.S. Dep't of Commerce</u>, 968 F.2d 916, 920 (9th Cir. 1992)). A predecisional document may be virtually any document that contains personal opinions and is designed to assist agency decision-makers in making their decisions. <u>Assembly of Cal.</u>, 968 F.2d at 920. A document is deliberative if its disclosure would expose the decision-making process in such a way that candid discussion within the agency would be discouraged, undermining the agency's ability to perform its functions. <u>Id.</u> Documents need not contain only subjective information to be exempt under the deliberative process privilege. <u>See</u> <u>Mead Data Cent., Inc. v. U.S. Dep't of the Air Force</u>, 566 F.2d 242, 256 (D.C. Cir. 1977). Purely factual material may be exempted if that material would expose the deliberative process of an agency. <u>Id.</u>

The Coalition raises the unlikelihood that every responsive document is exempt under the deliberative process privilege. Initially, this argument appears quite seductive; however, the Coalition's FOIA request is obviously tailored to ferret out disagreement or contradiction that arose in the process of creating the UMRSFFS. <u>See</u> <u>Barney v. IRS</u>, 618 F.2d 1268, 1273 (8th Cir. 1980) (finding it "apparent by the very nature of plaintiffs' request" that documents would be

exempt). The Coalition asked for three categories of documents: Those evidencing communication to or from the TAG, those evidencing disagreement or dispute about certain conclusions, and agendas and meeting minutes of the TAG. No purely factual, objective categories of documents were requested. That these documents could reveal the deliberative process of the TAG and IAG can be fairly concluded from the <u>Vaughn</u> index and its supporting affidavits.

The Coalition also argues that the prior release of some of the documents, in whole or part, destroys the credibility of the index and affidavits. We are not persuaded that the fact the UMRSFFS report was ultimately released and that some of the information in the final report was contained in the requested documentation affects the deliberative or predecisional nature of the requested documents.

We therefore conclude the <u>Vaughn</u> index is sufficient to establish that some of the information requested is, in fact, exempted by the deliberative process privilege. However, because the district court failed to analyze the segregability of the documents, we cannot conclude at this time that the privilege applied, as the district court concluded, to all 83 responsive documents in their entirety.

<u>Segregability</u>

In a FOIA action, the focus is on the information sought, not the documents themselves. <u>Schiller v. N.L.R.B.</u>, 964 F.2d 1205, 1209 (D.C. Cir. 1992) (citing <u>Mead Data Cent., Inc.</u>, 566 F.2d at 260). "Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). The withholding of an entire document by an agency is not justifiable simply because some of the material therein is subject to an exemption. <u>Rugiero v. U.S. Dep't of Justice</u>, 257 F.3d 534, 553 (6th Cir. 2001). Rather, non-exempt portions of documents must be disclosed unless they are "inextricably intertwined" with exempt portions. <u>Mead Data Cent., Inc.</u>, 566 F.2d at 260. Effectively, each document consists of "discrete units of information," all of which must fall within

a statutory exemption in order for the entire document to be withheld.  <u>Billington v. U.S. Dep't of Justice</u>, 233 F.3d 581, 586 (D.C. Cir. 2000).

In every case, the district court must make an express finding on the issue of segregability.  <u>Morley v. CIA</u>, 508 F.3d 1108, 1123 (D.C. Cir. 2007); <u>Rugiero</u>, 257 F.3d at 553; <u>Church of Scientology of Cal. v. U.S. Dep't of the Army</u>, 611 F.2d 738, 744 (9th Cir. 1979).  <u>But cf.</u> <u>Becker v. IRS</u>, 34 F.3d 398, 406 (7th Cir. 1994) (suggesting that segregability may be presumed considered if the district court reviews the documents <i>in camera</i>).  The agency has the burden to show that the exempt portions of the documents are not segregable from the non-exempt material.  <u>Davin v. U.S. Dep't of Justice</u>, 60 F.3d 1043, 1052 (3d Cir. 1995).  If the agency's  justification is inadequate, the district court may require an agency to submit a more specific affidavit.  <u>See</u> <u>PHE, Inc. v. U.S. Dep't of Justice</u>, 983 F.2d 248, 253 (D.C. Cir. 1993).  The agency's justification must be relatively detailed, correlating specific parts of the requested documents with the basis for the applicable exemption.  <u>Schiller</u>, 964 F.2d at 1209-10 (citing <u>Schwartz v. IRS</u>, 511 F.2d 1303, 1306 (D.C. Cir. 1975) and <u>King v. U.S. Dep't of Justice</u>, 830 F.2d 210, 224 (D.C. Cir. 1987)).  The requisite specificity of an affidavit and the reasonableness of segregation are dependent upon the proportion and distribution of non-exempt information in a given document:

> For example, if only ten percent of the material is non-exempt and it is interspersed line-by-line throughout the document, an agency claim that it is not reasonably segregable because the cost of line-by-line analysis would be high and the result would be an essentially meaningless set of words and phrases might be accepted. On the other extreme, if a large proportion of the information in a document is non-exempt, and it is distributed in logically related groupings, the courts should require a high standard of proof for an agency claim that the burden of separation justifies nondisclosure or that disclosure of the non-exempt material would indirectly reveal the exempt information.

Mead Data Cent., Inc., 566 F.2d at 261.  Such detailed explanation and justification should enable a district court to conduct its review in open court, preserving the adversarial nature of the process and avoiding undesirable, *in camera* line-by-line analyses.  Id. at 261.

Here, the district court made no findings on the issue of segregability. Although the issue was properly raised and preserved for appeal, we are unable to determine from the record whether the issue was considered and rejected or not considered at all.[3]  Therefore, we must remand the case for a segregability analysis consistent with this opinion.

## III.

We remand for further proceedings.

––––––––––––––––––––

[3]We offer no opinion whether the index and affidavits are sufficient to complete the segregability analysis contemplated by this opinion.  On remand, the district court is free to conduct the analysis as it deems appropriate, be that on the record as it exists, by requesting a more detailed index or affidavit, or, as a last resort, by conducting an *in camera* review.