# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-2210

_____

Christopher W. Madel

*Plaintiff - Appellant*

v.

United States Department of Justice; Drug Enforcement Administration

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 10, 2015
Filed: April 21, 2015

_____

Before BYE, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Christopher W. Madel sued the Department of Justice and Drug Enforcement Administration for a response to two Freedom of Information Act requests. DEA withheld some documents as confidential commercial information. The district court granted summary judgment to DEA, finding it produced all non-exempt information. The court denied declaratory and injunctive relief and attorney fees. Madel appeals. Having jurisdiction under 28 U.S.C. § 1291, this court reverses and remands.

I.

In November 2012 and February 2013, Madel submitted FOIA requests to DEA seeking information on oxycodone transactions in Georgia by five private companies: Cardinal Health, Inc., CVS Caremark, Walgreen Co., AmerisourceBergen Corp., and McKesson Corp.[1]  *See* **5 U.S.C. § 552**.  Madel also requested seven reports from DEA's Automation of Reports and Consolidated Orders System (ARCOS).[2]  DEA acknowledged each request within the statutory timeframe, but did not indicate whether it would comply.  **Id. § 552(a)(6)** (providing that agency must inform requester whether it will comply within 20 days after receiving request, unless exceptional circumstances apply).

In May 2013, DEA requested processing fees, which Madel paid.  In October, after contacting DEA and receiving no response, Madel sued.  In December, DEA produced ARCOS reports 2, 3, 4, 5, and 7.  In January 2014, DEA, citing Exemption 4's protection of confidential commercial information, informed Madel it was withholding five documents: ARCOS report 1 and four spreadsheets of oxycodone sales, one each for Cardinal Health, Walgreens, AmerisourceBergen, and McKesson.  *See* **id. § 552(b)(4)**.  (DEA found no responsive documents for CVS Caremark or report 6.)  Report 1 documents quarterly and annual drug distributions to individual

---

[1]For example, "For each month (or quarter) and year since January 1, 2006, all documents that state and/or include data regarding Cardinal Health, Inc.'s distribution of oxycodone to persons located in the State of Georgia, including, but not limited to, for each month (or quarter) and year since January 1, 2006, the identity of each person in the State of Georgia that Cardinal Health, Inc. distributed the oxycodone to, and the quantity of oxycodone that Cardinal Health, Inc. distributed to that person (in dosage units and grams)."  (internal footnote omitted).  Madel defined "person" to include, among others, individuals, corporations, and government entities.

[2]"For each month (or quarter) and year since January 1, 2007, reports ## 1, 2, 3, 4, 5, 6, and 7 from the ARCOS-2 database (in dosage units and grams)."

retail registrants (for example, retail pharmacies or hospitals) by three-digit zip code. It includes data on every state and over 1,260 DEA registrants. The spreadsheets document sales in Georgia by each company, identifying every buyer, location of sale, and amount of drug.

The district court granted summary judgment to DEA, finding the withheld documents exempt under Exemption 4. It dismissed Madel's request for declaratory and injunctive relief as moot and denied attorney fees.

## II.

Madel argues that DEA did not justify withholding the five documents under Exemption 4, and that DEA failed to meet FOIA's segregability requirement. The district court held that DEA produced all non-exempt responsive information. This court reviews de novo a grant of summary judgment. ***Missouri Coal. for Env't Found. v. U.S. Army Corps of Eng'rs***, 542 F.3d 1204, 1209 (8th Cir. 2008). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(a)**. It is available "where the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." ***Missouri Coal.***, 542 F.3d at 1209. *See also* **5 U.S.C. § 552(a)(4)(B)** ("[T]he burden is on the agency to sustain its action.").

## A.

Madel disputes the application of Exemption 4. Once an agency record is requested under FOIA, "the government must provide the information unless it determines that a specific exemption applies." ***In re DOJ***, 999 F.2d 1302, 1305 (8th Cir. 1993) (en banc). *See* **5 U.S.C. § 552(b)** (exempting nine categories of

information from disclosure); *Missouri Coal.*, 542 F.3d at 1208 (noting exemptions are "narrowly construed"). Exemption 4 prevents disclosure of "trade secrets and commercial or financial information obtained from a person and privileged or confidential." **5 U.S.C. § 552(b)(4)**. Information is "confidential" when a company is legally required to provide it to the government if its disclosure is likely: "'(1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.'" *Contract Freighters, Inc. v. Sec'y of U.S. Dep't of Transp.*, 260 F.3d 858, 861 (8th Cir. 2001), *quoting Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974). *See also id.* at 862 (noting different standard for information voluntarily provided to the government), *citing Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 879 (D.C. Cir. 1992).

To claim an exemption, an agency must "provide affidavits which justify the claimed exclusion of each document by correlating the purpose for exemption with the actual portion of the document which is alleged to be exempt." *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1387 (8th Cir. 1985). While agency affidavits receive "substantial weight," they must include more than "barren assertions" that a document is exempt. *Id.* (internal quotation marks omitted). *See also Missouri Coal.*, 542 F.3d at 1210 ("Boilerplate or conclusory affidavits, standing alone, are insufficient to show that no genuine issue of fact exists as to the applicability of a FOIA exemption."); *Quiñon v. FBI*, 86 F.3d 1222, 1227 (D.C. Cir. 1996) ("The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping. If the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents." (internal quotation marks omitted)).

As noted, DEA withheld five documents: report 1 and one spreadsheet of oxycodone-distribution data per company. Companies are legally required to submit the information in these documents. Madel does not dispute that the information is "commercial or financial" and "obtained from a person." He argues it is not "confidential." DEA counters that release "is likely to cause substantial harm to the competitive position of the person from whom the information was obtained."

Supporting its claim of substantial competitive harm, DEA submitted a declaration from Katherine L. Myrick, Chief of DEA's FOIA/Privacy Act Unit. The Declaration says report 1 contains information traceable to individual manufacturers and distributors, such as market shares in specific geographic areas, estimates of inventories, and sales. The Declaration notes that the information could identify individual registrants and "[i]f competitors were to obtain such data, they would be able to use it to target specific markets, forecast potential business of new locations, or to gain market share in existing locations." This could cause harm to "potentially a large number of companies that distribute to retail registrants." The Declaration distinguishes already-produced reports 2, 3, 4, 5, and 7 because they are too diluted to reveal any particular company's market share, listing oxycodone amounts sold or distributed in a state or the entire United States.

The four companies, informed of Madel's request, objected to the spreadsheets' disclosure. *See* **28 C.F.R. § 16.8(d)** (providing for notice before DOJ discloses business information in response to FOIA request). Summarizing their concerns, the Declaration states that the data in the withheld spreadsheets could be used to determine the companies' market shares, inventory levels, and sales trends in particular areas. The Declaration notes that competitors could use this information, like the data in report 1, to "target specific markets, forecast potential business of new locations, or to gain market share in existing locations," thereby gaining competitive advantage. The Declaration highlights that the release of the data would permit competitors to circumvent two of the companies' existing anti-diversion measures.

DEA shows substantial competitive harm is likely. DEA does not make "barren assertions" that the documents are exempt, but links each document to identifiable competitive harms. *See Miller*, 779 F.2d at 1387. Madel has offered no reason or evidence to disbelieve DEA's claims of harm. He does not argue that DEA acted in bad faith, or that he cannot meaningfully contest the exemption's application. Madel relies on an out-of-circuit district court case to demonstrate that DEA's explanation is conclusory, but the agency there failed to respond to the requester's specific rebuttal of its assertions of competitive harm. *See Biles v. Dep't of Health & Human Servs.*, 931 F. Supp. 2d 211, 224 (D.D.C. 2013) (noting requester's arguments that data is stale; much of it is publicly available; and there is no competitive "harm" because all companies must disclose the same degree of data). Madel makes no such rebuttal of DEA's explanation. The district court did not err in holding that information in the withheld documents is subject to Exemption 4.

B.

DEA withheld the five documents in their entirety, claiming no reasonably segregable non-exempt information. Madel argues that the district court failed to make a finding on segregability, and claims that the Declaration does not justify DEA's segregability determination.

An agency may not automatically withhold an entire document when some information is exempt, but rather must provide "'[a]ny reasonably segregable portion.'" *Missouri Coal.*, 542 F.3d at 1212, *quoting* **5 U.S.C. § 552(b)**. Non-exempt portions must be disclosed unless they are "inextricably intertwined" with exempt portions. *Id.* (internal quotation marks omitted). The agency has the burden to show that exempt portions are not segregable from non-exempt portions. *Id.* (noting court may require a more specific affidavit if agency justification is inadequate). "In every case, the district court must make an express finding on the issue of segregability."

*Id.*, *citing **Morley v. CIA***, 508 F.3d 1108, 1123 (D.C. Cir. 2007) (noting court has duty to examine segregability sua sponte if not raised).

The district court erred by failing to make an express finding on segregability. DEA argues that, because segregability was briefed and argued below, there is a finding on segregability in the court's conclusion: "[T]he statements in that Declaration establish grounds for nondisclosure that are reasonable and consistent with the law." This approach was rejected in *Missouri Coalition*, which requires "an express finding." *Id.* at 1212-13 (remanding case when segregability was properly raised in district court, but it is unclear from the record if the court considered it).

DEA urges this court to determine segregability in the first instance, relying on *Juarez v. DOJ*, 518 F.3d 54, 60-61 (D.C. Cir. 2008), which finds a remand for an express finding unnecessary when an appellate court reviews the record and determines no information is segregable. Even assuming this court adopted the out-of-circuit approach, DEA, relying solely on the Declaration, does not show "with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Id.* at 61. Although DEA expresses the concern that *any* connection between individual buyers and sellers would lead to substantial competitive harm, this is not supported by the Declaration. The Declaration does not address how disclosure of the data from, say, 2007, leads to the proffered substantial competitive harms of a competitor "target[ing] specific markets" or "forecast[ing] potential business of new locations." The claims of harm are undermined by DEA's public release of four charts showing total dosage units sold per month by Cardinal Health to four named buyers in Florida over four years. The Declaration also does not address whether disclosing only distributions over 100,000 or 200,000 units per year, as Madel offered, would have the same competitive harm as disclosing all the data. The case is remanded to the district court for an express finding on segregability.

Given this court's decision on segregability, the denials of declaratory and injunctive relief and attorney fees are also reversed and remanded.

\* \* \* \* \* \* \*

The judgment is reversed, and the case remanded for proceedings consistent with this opinion.

_____