Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/07/2020 08:08 AM CDT

State of Nebraska ex rel. BH Media Group, Inc.,
doing business as Omaha World-Herald, appellee
and cross-appellant, v. Scott Frakes, in his
official capacity as director of the Nebraska
Department of Correctional Services,
appellant and cross-appellee.

State of Nebraska ex rel. Lee Enterprises, Inc.,
doing business as Lincoln Journal Star, appellee
and cross-appellant, v. Scott Frakes, in his
official capacity as director of the Nebraska
Department of Correctional Services,
appellant and cross-appellee.

State of Nebraska ex rel. Amy A. Miller and
ACLU of Nebraska Foundation, appellees
and cross-appellants, v. Scott Frakes, in his
official capacity as director of the Nebraska
Department of Correctional Services,
appellant and cross-appellee.

___ N.W.2d ___

Filed May 15, 2020.   Nos. S-18-604 through S-18-606,
S-19-027 through S-19-029.

1. **Mandamus: Words and Phrases.** Mandamus is a law action, and it is an extraordinary remedy, not a writ of right.
2. **Judgments: Appeal and Error.** In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, and an appellate court will not disturb those findings unless they are clearly erroneous.
3. **Mandamus.** Whether to grant a writ of mandamus is within the trial court's discretion.

4. **Statutes: Appeal and Error.** Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.

5. **Legislature: Statutes: Intent: Records.** In enacting the public records statutes, the Legislature has determined that the welfare of the people is best served through liberal public disclosure of the records of the three branches of government.

6. **Legislature: Statutes: Intent: Records: Public Policy.** Because the Legislature has expressed a strong public policy for disclosure, an appellate court must narrowly construe statutory exemptions shielding public records from disclosure.

7. **Mandamus: Proof.** A party seeking a writ of mandamus under Neb. Rev. Stat. § 84-712.03 (Reissue 2014) has the burden to satisfy three elements: (1) The requesting party is a citizen of the state or other person interested in the examination of the public records, (2) the document sought is a public record as defined by Neb. Rev. Stat. § 84-712.01 (Reissue 2014), and (3) the requesting party has been denied access to the public record as guaranteed by Neb. Rev. Stat. § 84-712 (Reissue 2014).

8. **Records: Proof.** If the requesting party satisfies its prima facie claim for release of public records, the public body opposing disclosure must show by clear and conclusive evidence that Neb. Rev. Stat. § 84-712.05 (Reissue 2014) or Neb. Rev. Stat. § 84-712.08 (Reissue 2014) exempts the records from disclosure.

9. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

10. **Statutes: Legislature: Intent.** In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

11. **Statutes.** It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute.

12. **Records: Words and Phrases.** Disclosure, within the meaning of the public records statutes, refers to the exposure of documents to public view.

13. **Pleadings: Time: Appeal and Error.** When any terminating motion such as a motion to alter or amend is timely filed, a notice of appeal filed before the court announces its decision upon the terminating motion shall have no effect, whether filed before or after the timely filing of the terminating motion.

14. **Attorney Fees: Appeal and Error.** On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion.
15. **Administrative Law: Records.** The withholding of an entire document by an agency is not justifiable simply because some of the material therein is subject to an exemption.

Appeals from the District Court for Lancaster County: Jodi L. Nelson, Judge. Appeals in Nos. S-18-604 through S-18-606 dismissed. Judgments in Nos. S-19-027 through S-19-029 affirmed in part, and in part reversed and remanded with directions.

Douglas J. Peterson, Attorney General, and Ryan S. Post for appellant.

Shawn D. Renner, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellees BH Media Group, Inc., and Lee Enterprises, Inc.

Christopher Eickholt, of Eickholt Law, L.L.C., for appellees Amy A. Miller and ACLU of Nebraska Foundation.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Freudenberg, JJ., and Moore, Judge.

Funke, J.

Scott Frakes, director of the Nebraska Department of Correctional Services (DCS), appeals from writs of mandamus ordering the disclosure, pursuant to the Nebraska public records statutes, see Neb. Rev. Stat. §§ 84-712 through 84-712.09 (Reissue 2014, Cum. Supp. 2018 & Supp. 2019), of records related to DCS' efforts to acquire lethal injection drugs. Frakes contends that the records are not subject to the public records statutes and that the district court erred in determining that he failed to prove that the records should not be disclosed. Because Frakes' contentions contradict the text of Nebraska's public records statutes and are adverse to this court's public records precedent, we find that his appeal is without merit.

Relators have cross-appealed, arguing that the court erred in not ordering the redaction of confidential portions of otherwise public records and compelling the release of the redacted documents. As a matter of first impression, we agree with relators.

We therefore affirm in part, and in part reverse and remand with directions in cases Nos. S-19-027 through S-19-029. We dismiss the appeals in cases Nos. S-18-604 through S-18-606.

## BACKGROUND

This matter concerns three cases consolidated for purposes of trial and appeal. The relators are BH Media Group, Inc., doing business as Omaha World-Herald (OWH); Lee Enterprises, Inc., doing business as Lincoln Journal Star (LJS); and Amy A. Miller and ACLU of Nebraska Foundation. In October and November 2017, each relator submitted public records requests pursuant to the public records statutes, seeking information related to DCS' purchase of pharmaceuticals for use in the lethal injection execution protocol. DCS provided responsive documents to each request, and it informed relators that it had additional responsive documents in its possession that would be withheld from disclosure. DCS stated that the withheld records consist of (1) communications between a DCS execution team member and a lethal injection drug supplier, (2) Drug Enforcement Agency (DEA) forms, (3) inventory logs, (4) chemical analysis reports, (5) photographs of packaging, (6) invoices, and (7) purchase orders. DCS responded that these documents would not be disclosed, because they are confidential and exempt from disclosure under Neb. Rev. Stat. § 83-967(2) (Reissue 2014) and because they are not public records as defined under § 84-712.01(1).

Each relator petitioned the district court for Lancaster County for a writ of mandamus to compel Frakes, in his official capacity as director of DCS, to produce the withheld records. In each case, the court entered a show cause order and Frakes filed an answer and response. Frakes argued that nondisclosure is justified under § 83-967(2), which makes the identity of all

members of the execution team confidential and exempt from disclosure under the public records statutes.

The matter proceeded to trial. The court heard testimony from Miller, a citizen of Nebraska and an attorney for the ACLU of Nebraska Foundation; JoAnne Young, a reporter for LJS; and Joe Duggan, a reporter for OWH. A previous public records request by Miller and response by DCS from August 16, 2016, was offered into evidence as exhibit 10. Exhibit 10 contains correspondence between Frakes and a drug supplier concerning DCS' payment for lethal injection drugs, an offer to sell and purchase order, invoices, DEA forms, and photocopies of packaging showing the expiration dates of lethal injection drugs.

Young testified about her reporting on state government and death penalty issues for the LJS since 2007. She admitted she may attempt to interview DCS' lethal injection drug supplier if she learned its identity. Duggan testified that if he received information about the supplier, he would attempt to interview the supplier and would ask who else might have information about its transaction with DCS.

The relators called Frakes as a witness. Under DCS' execution protocol,[1] which was received into evidence, the DCS director, the Nebraska State Penitentiary warden, and the Nebraska State Penitentiary public information officer are designated as members of the execution team. In his testimony, Frakes admitted without objection that he is a member of the execution team. In addition, he confirmed the publicly known identities of the warden and public information officer. Frakes did not contend that the lethal injection drug supplier is a member of the execution team.

Frakes testified that he would not publicly identify other members of the execution team, because there is the potential for threats or harassment. He testified that the purchase orders and chemical analysis reports were withheld, because they identify a member of the execution team "on their face." He

---

[1] 69 Neb. Admin. Code ch. 11, § 003 (2017).

testified that the communication with a supplier, DEA forms, photographs, and invoices were withheld, because they identify the supplier and, if contacted, the supplier could share the identity of a team member. He stated that "since the supplier has direct knowledge of team members, or at least one team member . . . I can . . . draw the connection that [it] would be able to identify a member of the team." Frakes testified that inventory logs were withheld, because they "contain information that ultimately could lead to identifying the supplier." He admitted that he had the ability to redact identifying information contained in the records and that he could ask the supplier not to identify any team members. He did not know whether DCS' contract with the supplier contains a confidentiality or nondisclosure provision. He asserted that the photographs of packaging are attorney work product.

In closing arguments, the relators argued that the purchase orders and chemical analysis reports should undergo a redaction process and be disclosed. Regarding the remaining records, they argued that there is no provision under Nebraska law which makes the identity of a lethal injection drug supplier confidential. Frakes argued that because the withheld records name the supplier and the supplier knows the identity of a team member, the withheld records are reasonably calculated to lead to the identity of a team member.

On June 18, 2018, the district court entered orders in each case partially granting and partially denying the requests for writs of mandamus. The court found that pursuant to § 84-712.01(3), it was required to liberally construe public records laws in favor of disclosure. The court found the relators met their burden to show a prima facie claim that they were denied access to public records as guaranteed by public records laws. The court interpreted § 83-967(2) as an exemption from disclosure under the public records statutes and found that the burden therefore shifted to Frakes to prove by clear and convincing evidence that the documents sought were exempt from disclosure. The court found that the purchase orders and chemical analysis reports identified execution team

members on their face and therefore were exempt from disclosure under § 83-967(2). As to the remaining documents, the court found that Frakes failed to meet his burden to show that an exemption applies. The court stated that "[t]he evidence is speculative at best" that disclosure of these documents would lead to the identification of an execution team member. The court found that Frakes had not proved that the photographs of packaging are attorney work product. The court ordered Frakes to disclose within 7 days the communications with the supplier, DEA records, invoices, inventory logs, and photographs of packaging.

On June 19, 2018, Frakes filed a notice of appeal. On June 27, relators filed motions to alter or amend the judgments to include an award of attorney fees and costs. The court determined that, despite Frakes' notice of appeal, it had jurisdiction over the motions to alter or amend. The court found the motions to alter or amend were proper, because relators had requested attorney fees in their petitions. Following a hearing, the court granted relators' motions for an award of attorney fees and costs. Frakes appealed, and relators crossappealed. We moved the appeals to our docket and consolidated them.

## ASSIGNMENTS OF ERROR

Frakes assigns, restated, that the district court erred in (1) finding relators had established standing and jurisdiction, (2) finding relators had met their burden to show the documents sought are public records as defined by § 84-712.01, (3) finding § 83-967(2) is an exemption from disclosure that the public body must prove applies by clear and convincing evidence, (4) finding Frakes failed to establish by clear and convincing evidence that the withheld documents are reasonably calculated to lead to the identity of an execution team member, (5) finding Young's public records request was properly submitted, (6) finding the court had jurisdiction to rule on the motions to alter or amend, and (7) finding relators were entitled to attorney fees and costs.

Relators assign on cross-appeal that the district court erred in not requiring disclosure of the purchase orders and chemical analysis reports with the redactions of confidential information, in accordance with § 84-712.06.

## STANDARD OF REVIEW

[1-3] Mandamus is a law action, and it is an extraordinary remedy, not a writ of right.[2] In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, and we will not disturb those findings unless they are clearly erroneous.[3] Whether to grant a writ of mandamus is within the trial court's discretion.[4]

[4] Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.[5]

## ANALYSIS

[5] In enacting the public records statutes, the Legislature has determined that the welfare of the people is best served through liberal public disclosure of the records of the three branches of government.[6] Section 84-712.01(1) defines public records in Nebraska: "[P]ublic records shall include all records and documents, regardless of physical form, of or belonging to this state, any county, city, village, political subdivision, or tax-supported district in this state, or any agency, branch, department, board, bureau, commission, council, subunit, or committee of any of the foregoing."

[6] The Legislature intended that courts liberally construe §§ 84-712 to 84-712.03 for disclosure "whenever any state . . . record of receipt [or] voucher, invoice, purchase order . . . or

---

[2] *State ex rel. Veskrna v. Steel*, 296 Neb. 581, 894 N.W.2d 788 (2017).

[3] *Id*.

[4] *Id*.

[5] *Aksamit Resource Mgmt. v. Nebraska Pub. Power Dist.*, 299 Neb. 114, 907 N.W.2d 301 (2018).

[6] *Id.*

expenditure involving public funds is involved."[7] And it did so "in order that the citizens of this state shall have the full right to know of and have full access to information on the public finances of . . . the public bodies and entities created to serve them."[8] Because the Legislature has expressed a strong public policy for disclosure, an appellate court must narrowly construe statutory exemptions shielding public records from disclosure.[9]

[7,8] A person denied access to a public record may file for speedy relief by a writ of mandamus under § 84-712.03.[10] A party seeking a writ of mandamus under § 84-712.03 has the burden to satisfy three elements: (1) The requesting party is a citizen of the state or other person interested in the examination of the public records, (2) the document sought is a public record as defined by § 84-712.01, and (3) the requesting party has been denied access to the public record as guaranteed by § 84-712.[11] If the requesting party satisfies its prima facie claim for release of public records, the public body opposing disclosure must show by clear and conclusive evidence that § 84-712.05 or § 84-712.08 exempts the records from disclosure.[12]

## JURISDICTION

We have two sets of appeals: those taken following the June 18, 2018, orders and those taken after the district court awarded attorney fees to the relators. The first appeals were

---

[7] § 84-712.01(3).

[8] *Id.*

[9] *Aksamit Resource Mgmt., supra* note 5.

[10] *Id*.

[11] *Id*. See *State ex rel. Neb. Health Care Assn. v. Dept. of Health*, 255 Neb. 784, 587 N.W.2d 100 (1998).

[12] See *Aksamit Resource Mgmt., supra* note 5; *State ex rel. Neb. Health Care Assn., supra* note 11. Cf. *State ex rel. Veskrna, supra* note 2 (using clear and convincing burden of proof); *Evertson v. City of Kimball*, 278 Neb. 1, 767 N.W.2d 751 (2009).

premature.[13] We dismiss those appeals for lack of jurisdiction. We have jurisdiction over the second set of appeals.

## Standing

Frakes argues that the relators lack standing to bring this mandamus action, because they failed to prove, as a threshold matter, that the documents they seek are "public records" as defined by § 84-712.01. In framing this as a standing argument, rather than a burden of proof argument, Frakes relies on language from *State ex rel. Neb. Health Care Assn. v. Dept. of Health*.[14] In that case, as referenced above, we set out the respective burdens of proof that applied to those seeking to use mandamus to compel access to public records and those seeking to withhold such records. Frakes is correct that, in dicta, we described the relator's burden of proof as something that was necessary "[i]n order to establish standing and jurisdiction"[15] to bring a mandamus action under § 84-712.03. But our language regarding standing and jurisdiction was imprecise, and has caused unnecessary confusion.

In the context of a public records denial, a district court's jurisdiction over a writ of mandamus is governed by § 84-712.03, and such jurisdiction does not turn on whether the claim advanced by the relator has merit. The concept of standing relates to a court's power to address the issues presented and serves to identify those disputes which are appropriately resolved through the judicial process.[16] The focus of the standing inquiry is on whether the plaintiff is the proper party to assert the claim.[17] Indeed, in considering standing, the legal and factual validity of the claim presented must be

---

[13] See *State ex rel. Fick v. Miller*, 252 Neb. 164, 560 N.W.2d 793 (1997).

[14] *State ex rel. Neb. Health Care Assn., supra* note 11.

[15] *Id.*, 255 Neb. at 789, 587 N.W.2d at 105.

[16] *Griffith v. Nebraska Dept. of Corr. Servs.*, 304 Neb. 287, 934 N.W.2d 169 (2019).

[17] *Id.*

assumed.[18] To the extent *State ex rel. Neb. Health Care Assn.* framed the relator's showing in a mandamus action seeking public records as a matter of standing and jurisdiction rather than a threshold burden of proof, we disapprove of that language.

A party denied access to records need only establish a prima facie claim that the requested record is a public record.[19] A party has established a prima facie claim if it has produced enough evidence to demonstrate that it is entitled to judgment if the evidence were uncontroverted.[20] The inquiry of whether a requested record is a public record focuses on the information or record sought.[21]

The categories of records at issue in Frakes' appeal are the records that the district court found did not on their face identify an execution team member, which are (1) communications between a DCS execution team member and a supplier, (2) DEA forms, (3) inventory logs, (4) photographs of packaging, and (5) invoices. Relators have not sought the identity of any execution team member and have requested that any confidential information within the records be redacted prior to their disclosure.

Here, after correctly setting out the parties' respective burdens of proof, the district court made factual findings that relators met their burden to prove they were citizens of Nebraska or other persons interested in the examination of the public records, that the documents sought were public records as defined by § 84-712.01, and that Frakes had denied them access to the records. Because we do not find

---

[18] *Id.*

[19] See, *City of Kimball, supra* note 12; *State ex rel. Neb. Health Care Assn., supra* note 11.

[20] See *Chicago Lumber Co. of Omaha v. Selvera*, 282 Neb. 12, 809 N.W.2d 469 (2011).

[21] See, *State ex rel. Adams Cty. Historical Soc. v. Kinyoun*, 277 Neb. 749, 765 N.W.2d 212 (2009); *City of Kimball, supra* note 12; *State ex rel. Neb. Health Care Assn., supra* note 11.

any of these findings to be clearly erroneous, we will not disturb them.

Frakes' position is distinguishable from our decision in *State ex rel. Unger v. State*.[22] In *State ex rel. Unger*, the relator sought the disclosure of a portion of a presentence report consisting of a victim's questionnaire, which raised the issue of whether a presentence report is within the definition of "public records" under § 84-712.01. We found that under Neb. Rev. Stat. § 29-2261(6) (Cum. Supp. 2014), a presentence report is privileged and wholly exempt from disclosure unless otherwise provided by statute, and that as a result, presentence report materials are not considered public records under § 84-712.01(1). Even recognizing that *State ex rel. Unger* upheld a public body's decision to withhold information, that case does not support the overbroad theory that Frakes asserts here. If Frakes were correct on his standing and jurisdiction theory, we would have dismissed the appeal in *State ex rel. Unger* for lack of jurisdiction, but we did not do so. We affirmed the district court's decision that the relator failed to establish a prima facie claim, because, in that case, the Legislature expressly made privileged a particular type of record, a presentence report. Consequently, the relator failed to set forth a prima facie claim, because even if his claim were uncontroverted, the information sought was privileged. Here, accepting their claims as uncontroverted for purposes of establishing a prima facie claim, relators have not sought privileged information, including the identity of any execution team member, nor any information reasonably calculated to lead to the identity of an execution team member. Section 83-967(2) does not impede relators' ability to establish a prima facie claim.

Frakes separately argues that Young and Duggan did not submit records requests on behalf of LJS and OWH respectively. However, the record is clear that Young and Duggan submitted the requests as journalists for their respective news

---

[22] *State ex rel. Unger v. State*, 293 Neb. 549, 878 N.W.2d 540 (2016).

organizations. The record is also clear that DCS was responding to Young and Duggan as representatives of their respective news organizations. Frakes further argues that Young's request was in the form of questions and not requests. Assuming without deciding that Young's records request was not submitted in the proper form, we find that Frakes has waived this argument pursuant to §§ 84-712(4) and 84-712.04. However, DCS did not deny Young's request on this basis and simply responded in the same manner as it did to the other requesting parties. Therefore, Young did not have an opportunity to modify her request as provided under § 84-712(4).

The relators have standing, and the district court had jurisdiction under § 84-712.03.

## Documents Subject to Public Records Statutes

Frakes next argues that the requested documents are not subject to the public records statutes based on § 83-967(2). Frakes contends that the disclosure of the documents will lead to the identity of the execution team members. Frakes relies upon the first clause of § 83-967(2), which provides: "The identity of all members of the execution team, and any information reasonably calculated to lead to the identity of such members, shall be confidential and exempt from disclosure pursuant to sections 84-712 to 84-712.09 . . . ."

It is well-understood that the public records statutes place the burden of proof upon the public body to justify nondisclosure.[23] In order for Frakes to withhold records responsive to relators' public information requests based upon § 83-967(2), he has to show that the information identifies a member of the execution team or is reasonably calculated to lead to the identity of such a member.

[9-11] Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to

---

[23] See, § 84-712.03(2); *City of Kimball, supra* note 12; *State ex rel. Neb. Health Care Assn., supra* note 11.

interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[24] In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[25] It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute.[26]

We first analyze Frakes' argument that as a matter of statutory interpretation, § 83-967(2) provides a complete exception to Nebraska's public records laws pursuant to the "other statute" exception found in § 84-712(1). Section 84-712(1) states: "*Except as otherwise expressly provided by statute*, all citizens of this state and all other persons interested in the examination of the public records as defined in section 84-712.01 are hereby fully empowered and authorized to (a) examine such records, and . . . obtain copies of public records . . . ." (Emphasis supplied.)

Frakes argues that § 83-967(2) is an "other statute" and that when §§ 83-967(2) and 84-712(1) are read together, they combine to create an "exception from the entirety of the [public records statutes],"[27] and that therefore, the documents requested by relators are "not subject to the statute authorizing records requests."[28]

The public records statutes encourage open and transparent government. Even so, the Legislature has made certain records exempt from disclosure under §§ 84-712.05 and 84-712.08. Section 84-712.05 provides that 23 separate categories of records "may be withheld from the public," so long as those

---

[24] *In re Application No. OP-0003*, 303 Neb. 872, 932 N.W.2d 653 (2019).

[25] *J.S. v. Grand Island Public Schools*, 297 Neb. 347, 899 N.W.2d 893 (2017).

[26] *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018).

[27] Reply brief for appellant in cases Nos. S-18-604 through S-18-606 at 9.

[28] Brief for appellant in cases Nos. S-18-604 through S-18-606 at 20.

records have not been "publicly disclosed in an open court, open administrative proceeding, or open meeting or disclosed by a public entity pursuant to its duties." Section 84-712.05 permits the withholding of a variety of categories of sensitive information, such as medical records and Social Security numbers. Several of these types of records are identified as "confidential."[29] Section 84-712.08 suspends §§ 84-712, 84-712.01, and 84-712.03 through 84-712.09, as well as Neb. Rev. Stat. § 84-1413 (Cum. Supp. 2016), when the application of those provisions would result in the loss of federal funds, services, or essential information which would otherwise be available to a state agency.

A statute qualifies as an "other statute" under § 84-712(1) when the plain language of a statute makes it clear that a record, or portions thereof, is exempt from disclosure in response to a public records request.[30] An "other statute" exemption does not allow a court to imply an exemption but only allows a specific exemption to stand.[31]

Section 83-967(2) provides that the identity of execution team members, and any information reasonably calculated to lead to the identity of such members, "shall be confidential and exempt from disclosure pursuant to sections 84-712 to 84-712.09." The plain and unambiguous language of § 83-967(2) contains an identifiable legislative intent to prevent the disclosure of the identities of execution team members. Section 83-967(2) thus qualifies as an "other statute" under § 84-712(1).

Although we agree that § 83-967(2) qualifies as an "other statute" under § 84-712(1), we disagree with Frakes about the impact of this conclusion. The plain and ordinary language of § 83-967(2) does not provide a complete exception

---

[29] See § 84-712.05(4), (13), and (16)(b).

[30] See *Doe ex rel. Roe v. Washington State Patrol*, 185 Wash. 2d 363, 374 P.3d 63 (2016).

[31] *Id*.

to the public records statutes. Rather, § 83-967(2) makes records "exempt from disclosure pursuant to sections 84-712 to 84-712.09." Frakes is attempting to imply an exception using § 84-712(1) without regard to the language found within § 83-967(2).

[12] An exemption from disclosure should not be misunderstood as an exception to the laws of the public records statutes. Disclosure, within the meaning of the public records statutes, refers to the exposure of documents to public view.[32] In arguing that § 83-967(2) creates an exception to the entirety of the public records statutes, Frakes presumes that the sole obligation imposed by the public records statutes is the exposure of documents to public view. Contrary to Frakes' presumption, however, the public records statutes impose other additional obligations upon governmental bodies. An example of such an additional obligation occurs when a public body denies a public records request and § 84-712.04(1) requires the public body to provide to the requesting party in writing a description of the withheld records and the reasons for denial, including citations to any particular supporting legal authority. The writing must name the public official responsible for denying the request and provide notice of the requester's right to administrative or judicial review of the public body's decision. Section 84-712.04(2) requires each public body to maintain a file of all denial letters and to make the file available to any person upon request.

The language of § 83-967(2) states only that certain records are "confidential and exempt from disclosure," which is similar to language the Legislature has used in exempting other confidential records from disclosure under § 84-712.05, like § 84-712.05(4), (13), and (16)(b). There is no language within § 83-967(2) that would relieve DCS of its obligations under the public records statutes to respond to and document public information requests even where documents are not exposed to

---

[32] *State ex rel. Neb. Health Care Assn., supra* note 11.

public view. Were we to accept Frakes' view that § 83-967(2) operates as a complete exception to the public records statutes, he would have no obligation to respond to a records request that he deems to implicate § 83-967(2), confirm the existence of records sought, explain why records may be withheld, provide notice of a right to judicial or administrative review of his decision, or keep these requests on file or make such file available upon request.

Under this court's precedent, we have consistently respected the venerable policies of the public records statutes when adjudicating the applicability of exemptions from disclosure.[33] In *State ex rel. Sileven v. Spire*,[34] the relator filed a public records request for documents relevant to investigations of him by law enforcement. The trial court found that the documents fell within the plain and ordinary meaning of an exemption under § 84-712.05(5), because the records were developed or received by law enforcement agencies as part of an investigation. The relator claimed that he had a heightened interest in obtaining the records, because he was entitled to review information regarding his criminal history record as provided by Neb. Rev. Stat. § 29-3525 (Reissue 1989). This court cited to Neb. Rev. Stat. § 29-3506 (Reissue 1989), which provides that "[c]riminal history record information shall not include intelligence or investigative information." In considering the impact of § 29-3506 on the relator's argument, we cited to the "other statute" exception found within § 84-712. We concluded that "[t]he information requested by the relator consists of records concerning an investigation of him and is specifically excluded from review under § 29-3506 as well as § 84-712.05(5)."[35] Thus, we understood in that context that both an "other statute" exception under § 84-712

---

[33] See, *State ex rel. Unger, supra* note 22; *State ex rel. Sileven v. Spire*, 243 Neb. 451, 500 N.W.2d 179 (1993).

[34] *State ex rel. Sileven, supra* note 33.

[35] *Id*., 243 Neb. at 457, 500 N.W.2d at 183.

and an exemption within § 84-712.05 applied, that both statutes protected the information sought from disclosure, and that applying either statute led to the same result. The fact that § 29-3506 qualified as an "other statute" did not render the public records statutes inapplicable nor preclude judicial review of the government's decision to withhold information, as Frakes argues § 83-967(2) does here.

State courts in other jurisdictions have held that all public records exceptions, including "other statute" exceptions, are construed narrowly.[36] The "narrow construction" rule means that if there is a plausible construction of a statute favoring disclosure of public records that construction will prevail.[37]

Reference to federal laws confirms the rule that an "other statute" exception is to be narrowly construed. "Nebraska, like the federal government and many other states, has broad public records laws that generally provide open access to governmental records."[38] We have previously analogized decisions under the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2018), to construe Nebraska's public records statutes.[39] As an analogy to § 84-712, the third exemption under the FOIA, 5 U.S.C. § 552(b)(3), provides that disclosure requirements do not apply to matters "specifically exempted from disclosure by statute." Exemptions under the FOIA "must be narrowly construed."[40]

---

[36] *Fisher Broadcasting v. City of Seattle*, 180 Wash. 2d 515, 326 P.3d 688 (2014). See, *American Civil Liberties Union of Northern California v. Superior Court*, 202 Cal. App. 4th 55, 134 Cal. Rptr. 3d 472 (2011); *County of Santa Clara v. Superior Court*, 170 Cal. App. 4th 1301, 89 Cal. Rptr. 3d 374 (2009); *Colby v. Gunson*, 224 Or. App. 666, 199 P.3d 350 (2008).

[37] *Colby, supra* note 36.

[38] *Kinyoun, supra* note 21, 277 Neb. at 754, 765 N.W.2d at 217.

[39] *City of Kimball, supra* note 12; *State ex rel. Neb. Health Care Assn., supra* note 11.

[40] *Dept. of Air Force v. Rose*, 425 U.S. 352, 361, 96 S. Ct. 1592, 48 L. Ed. 2d 11 (1976).

With these principles in mind, we agree with the district court's interpretation that § 83-967(2) is reasonably and ordinarily understood as an exemption like those under § 84-712.05. In the context presented here, we must interpret § 83-967(2) together with provisions under the public records statutes and narrowly construe § 83-967(2) in favor of disclosure, particularly due to the fact that this case concerns the expenditure of public funds.

Frakes relies on language from *Aksamit Resource Mgmt. v. Nebraska Pub. Power Dist.*[41] In that case, the power district relied on an exemption under § 84-712.05(3) to withhold its competitive information; the power district did not rely on an "other statute." We narrowly construed § 84-712.05(3) in favor of disclosure and held that the power district was required to disclose its records. We concluded our opinion by stating that had the Legislature passed a hypothetical "other statute" protecting the power district's competitive information, "we would not hesitate to apply the 'other statute' exception of the public records law and the general principle favoring a specific over a general statutes."[42]

Within 2 months of our decision, the Legislature passed superseding legislation in Neb. Rev. Stat. § 70-673 (Reissue 2018), which provides:

> (1) Notwithstanding any other provision of law, the public power industry . . . and the Nebraska Power Review Board may withhold competitive or proprietary information which would give an advantage to business competitors. . . .
>
> (2) Any request for records described in this section shall be subject to the procedures for public record requests provided in sections 84-712 to 84-712.09.

The language of § 70-673 demonstrates the shortcomings of Frakes' theory regarding § 83-967(2). First, by using the phrase

---

[41] *Aksamit Resource Mgmt., supra* note 5.

[42] *Id.*, 299 Neb. at 127, 907 N.W.2d at 310.

"[n]otwithstanding any other provision of law," the Legislature demonstrated with clear intention that § 70-673(1) should prevail when it conflicts with another statute. By contrast, § 83-967(2) does not state that information is exempt from disclosure "notwithstanding [the public records statutes]." Rather, § 83-967(2) states that information is exempt from disclosure "pursuant to [the public records statutes]." Under an appropriately narrow construction, § 83-967(2) can be harmonized with the public records statutes and interpreted as an exemption. Second, § 70-673(2) recognizes that, as described above, the public records statutes impose requirements to respond to and document public records requests. Under Frakes' reading of § 83-967(2), he is not subject to those statutory requirements even though § 83-967(2) is silent on the matter. Frakes' atextual interpretation must be rejected.

The lessons of *Aksamit Resource Mgmt.* counsel against Frakes' interpretation. In *Aksamit Resource Mgmt.*, we overruled a district court's determination that an exemption under § 84-712.05 applied and found that under an appropriately narrow construction of the exemption, the records at issue were required to be disclosed. We apply precisely the same rationale here. Guided by the Legislature's requirement under § 84-712.01(3) that we liberally construe public records statutes in favor of disclosure in cases which concern the expenditure of public funds, we conclude that the district court correctly interpreted § 83-967(2) as an exemption under the public records statutes. This assignment of error is without merit.

## Failure of Proof Exemption Applies

The next issue for consideration is whether Frakes met his burden of proving an exemption applies which justifies nondisclosure. The district court's findings in favor of relators have the effect of a jury verdict and will not be disturbed unless they are clearly erroneous.[43]

---

[43] See *State ex rel. Veskrna, supra* note 2.

Frakes argues on appeal that the documents ordered to be disclosed contain information "reasonably calculated to lead to the identity" of a team member as pronounced in § 83-967(2). However, the phrase "reasonably calculated" is undefined by statute and has not previously been interpreted by this court in the context of § 83-967(2). We need not do so here. But our analysis should not be read to disregard this phrase or to suggest that it could never lead to withholding records which would otherwise be subject to disclosure under the public records statutes.

Even accepting, only for purposes of argument, Frakes' proposed definition, the evidence did not rise to that level. He defines "reasonably calculated" as that which is "moderately likely."[44] Thus, he argues, § 83-967(2) protects "information [moderately likely] to lead to the identity" of an execution team member. Frakes testified that he understood identifying information of an execution team member to include that person's name, official title, personal or work email address, or office address. Apart from the purchase orders and chemical analysis reports, which identify a team member on their face, Frakes has not elicited any proof that the remaining records contain any identifying information with regard to an execution team member. Nor did he present *evidence* of a chain of discovery moderately likely to result in the discovery of the identity of an execution team member.

We digress to reject two arguments advanced by the parties. First, the relators disputed whether unidentified execution team members truly are at risk of threats or harassment if identified. But regardless of the factual record on this issue, the Legislature has protected against the disclosure of the identities of execution team members under § 83-967(2). Second, there is no merit to Frakes' argument that the occupations of Miller, Young, and Duggan make it more likely that disclosure of the records will lead to the identity of a team member. Frakes' duty to disclose public records does not depend on who makes the

---

[44] Brief for appellant in cases Nos. S-18-604 through S-18-606 at 25.

request. The public records statutes apply "equally to all persons without regard to the purpose for which the information is sought."[45] As a general rule, citizens are not required to explain why they seek public information.[46] "The information belongs to citizens to do with as they choose."[47] The withholding of information under public records laws cannot be predicated on the identity of the requester.[48]

Upon review of the sworn testimony, exhibits, the district court's order, and the parties' arguments on appeal, we conclude that Frakes failed to prove by clear and conclusive evidence that any of the requested records are reasonably calculated to lead to the identity of an execution team member. The evidence on this issue was slight on both sides, with the burden of proof on Frakes.

While objections were sustained to numerous questions which may have been aimed at meeting this burden, Frakes made no offers of proof[49] nor does he assign any error on appeal to these evidentiary rulings.[50]

In his presentation to the trial court, Frakes focused on arguing that the public records statutes are inapplicable and that relators carry the burden of proof. Frakes conceded that these records do not identify execution team members on their

---

[45] *State ex rel. Sileven, supra* note 33, 243 Neb. at 457, 500 N.W.2d at 183.

[46] *National Archives and Records Admin. v. Favish*, 541 U.S. 157, 124 S. Ct. 1570, 158 L. Ed. 2d 319 (2004).

[47] *Id*., 541 U.S. at 172.

[48] See *id*. See, also, *U. S. Dept. of Justice v. Reporters Committee*, 489 U.S. 749, 109 S. Ct. 1468, 103 L. Ed. 2d 774 (1989); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S. Ct. 1504, 44 L. Ed. 2d 29 (1975); *North v. Walsh*, 881 F.2d 1088 (D.C. Cir. 1989).

[49] See *Sturzenegger v. Father Flanagan's Boys' Home*, 276 Neb. 327, 754 N.W.2d 406 (2008) (to predicate error upon ruling to permit witness to answer specific question, record must show offer to prove facts sought to be elicited).

[50] See *Armstrong v. State*, 290 Neb. 205, 859 N.W.2d 541 (2015) (for appellate court to consider alleged error, party must specifically assign and argue it).

face, and he did not argue that the five categories of withheld records at issue contained any identifying information with regard to an execution team member. Frakes testified that the records identify a lethal injection drug supplier, which if contacted could disclose the identity of an execution team member. But he provided no evidence that such disclosure was likely. We agree with the district court that Frakes' attenuated reasoning about whether an unidentified third party may or may not divulge confidential information is unpersuasive.

Relators had little difficulty undermining Frakes' position on cross-examination. Frakes admitted that he could ask the supplier not to identify any execution team members, but did not know if this had been done. He also did not know if the contract with the supplier contains any confidentiality or nondisclosure provisions. In addition, Frakes acknowledged that the inventory logs do not identify a supplier, but, rather, they "contain information that ultimately could lead to identifying the supplier."

Frakes failed to prove that the records contain any information which if disclosed would reasonably lead to the identity of a team member. Frakes faced a weighty burden to prove by clear and conclusive evidence that an exemption applies. Frakes' conclusory allegations that records here come within an exemption are insufficient. The district court was well within its discretion to issue a partial writ to compel Frakes to produce these records. The court did not err in concluding that Frakes failed to prove by clear and conclusive evidence that an exemption applies.

ATTORNEY FEES

Frakes argues the district court lacked jurisdiction to award relators attorney fees and costs, because he had already filed a notice of appeal and paid the docket fee. In addition, Frakes argues that the award of attorney fees was improper, because there is evidence that the relators' expenses will be reimbursed by a third party. We find no merit to these assignments of error.

The district court issued orders on June 18, 2018, compelling Frakes to disclose the records which did not identify an execution team member on their face within 7 days. Frakes appealed the next day. Relators timely filed motions to alter or amend the judgments on June 27. Those motions asked the district court to alter or amend the judgments to award attorney fees and litigation costs to them pursuant to § 84-712.07, as requested in their petitions. The court's June 18 order was silent on the issue of attorney fees and therefore implicitly denied relators' request.[51] As to the relators' motions to alter or amend, the district court found that it had jurisdiction over the motions and awarded the relators reasonable attorney fees and costs.

Where a request for attorney fees is made pursuant to state law, attorney fees are generally treated as an element of court costs, and an award of costs in a judgment is considered a part of the judgment.[52] A party seeking statutorily authorized fees must make a request for such fees prior to a judgment in the cause.[53] If a postjudgment motion seeks a substantive alteration of the judgment, a court may treat the motion as one to alter or amend the judgment.[54] A motion to alter or amend a judgment under Neb. Rev. Stat. § 25-1329 (Reissue 2016) must be filed no later than 10 days after the entry of judgment.

[13] A motion to alter or amend a judgment is a "terminating motion" under Neb. Rev. Stat. § 25-1912(3) (Supp. 2017). Pursuant to § 25-1912(3), when any terminating motion such as a motion to alter or amend is timely filed, a notice of appeal filed before the court announces its decision upon the terminating motion shall have no effect, whether filed before

---

[51] See *Murray v. Stine*, 291 Neb. 125, 864 N.W.2d 386 (2015).

[52] *Webb v. Nebraska Dept. of Health & Human Servs.*, 301 Neb. 810, 920 N.W.2d 268 (2018).

[53] *Id*.

[54] *Clarke v. First Nat. Bank of Omaha*, 296 Neb. 632, 895 N.W.2d 284 (2017).

or after the timely filing of the terminating motion. That section further states that a new notice of appeal shall be filed within the prescribed time after the entry of the order ruling on the motion.[55]

Frakes admits that a timely filed motion to alter or amend would have nullified his notice of appeal filed on June 19, 2018, but argues that relators' motions were not motions to alter or amend. To make this argument, Frakes mistakenly claims that relators never made a request for attorney fees prior to judgment. However, the record is clear that the relators requested attorney fees in their pleadings. A request for attorney fees in a pleading is sufficient to comply with the requirement that a party must request such fees prior to judgment.[56] Relators' motions to include an award for attorney fees and costs sought substantive alteration of the judgments. Additionally, relators' motions were filed within 10 days of the entry of the judgment. As a result, under § 25-912(3), the motions to alter or amend caused Frakes' notice of appeal to have no effect. The district court had jurisdiction to award relators attorney fees and costs.

Frakes further argues that the court erred in awarding fees because they were not "reasonably incurred by the complainant."[57] Section 84-712.07 provides that in any case in which the complainant seeking access to public records has substantially prevailed, the court may assess against the public body which had denied access to their records reasonable attorney fees and other litigation costs reasonably incurred by the complainant. The record indicates that both OWH and LJS offered affidavits setting forth their fee arrangement with their counsel. The affidavits stated that OWH and LJS and their counsel agreed that "Media of Nebraska, Inc. would pay the

---

[55] See, *Bryson L. v. Izabella L.*, 302 Neb. 145, 921 N.W.2d 829 (2019); *State v. Blair*, 14 Neb. App. 190, 707 N.W.2d 8 (2005).

[56] See, *Webb, supra* note 52; *Murray, supra* note 51; *Olson v. Palagi*, 266 Neb. 377, 665 N.W.2d 582 (2003).

[57] § 84-712.07.

legal fees for the litigation." Frakes therefore contends that the relators "failed to offer any evidence they incurred any fees at all. Instead, they established the fees were incurred by a third party . . . ."[58] We disagree.

[14] On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion.[59] Black's Law Dictionary defines "'incur'" as a verb meaning "'[t]o suffer or bring on oneself (a liability or expense).'"[60] Here, the district court found that relators had incurred a fair and reasonable amount of attorney fees. Frakes does not contest the reasonableness of the amount of fees awarded, but merely argues that relators did not incur the fees because another entity has agreed to pay those fees. We find no error in the court's decision. Billing records in evidence show that relators did incur attorney fees. Section 84-712.07 requires only that the fees be "reasonably incurred." There is no requirement under § 84-712.07 that the fees be "'actually incurred'"[61] by the prevailing party. Relators incurred fees even if those fees were later reimbursed by a third party. This assignment of error is without merit.

## CROSS-APPEALS

On cross-appeal, relators argue that the district court erred in not ordering Frakes to redact confidential information contained in the purchase orders and chemical analysis reports and disclose the balance of such records in accordance with § 84-712.06. Relators' cross-appeals raise an issue of first impression under Nebraska law.

[15] Section 84-712.06 of the public records statutes requires that "[a]ny reasonably segregable portion of a record shall be

[58] Brief for appellant in cases Nos. S-19-027 through S-19-029 at 39.

[59] *TransCanada Keystone Pipeline v. Nicholas Family*, 299 Neb. 276, 908 N.W.2d 60 (2018).

[60] *Id.*, 299 Neb. at 285, 908 N.W.2d at 67, quoting Black's Law Dictionary 885 (10th ed. 2014).

[61] See *id*. (interpreting Neb. Rev. Stat. § 76-726 (Reissue 2018)).

provided to the public as a public record upon request after deletion of the portions which may be withheld." The FOIA contains an analogous provision under 5 U.S.C. § 552(b). In interpreting the FOIA, the Eighth Circuit has recognized that agencies are required to disclose nonexempt portions of a document, unless those nonexempt portions are inextricably intertwined with exempt portions.[62] Effectively, each document consists of "'discrete units of information,'" all of which must fall within a statutory exemption in order for the entire document to be withheld.[63] The withholding of an entire document by an agency is not justifiable simply because some of the material therein is subject to an exemption.[64]

The agency has the burden to show that the exempt portions of the documents are not segregable from the nonexempt material.[65] The agency's justification must be relatively detailed, correlating specific parts of the requested documents with the basis for the applicable exemption.[66] An agency need not commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content.[67] Ultimately, to carry its burden before the district court, the agency must provide a reasonably detailed justification rather than conclusory statements to support its claim that the nonexempt material in a document is not reasonably segregable.[68] When agencies demonstrate that the withheld records are exempt in their entireties, courts have upheld the

---

[62] *Mo. Coalition for Environment v. U.S. Army Corps*, 542 F.3d 1204 (8th Cir. 2008).

[63] *Id*. at 1212.

[64] *Id*.

[65] *Id*.

[66] *Id*.

[67] *Mead Data Cent., Inc. v. U.S. Dept. of Air Force*, 566 F.2d 242 (D.C. Cir. 1977).

[68] See, *id*.; *Schoenman v. F.B.I.*, 841 F. Supp. 2d 69 (D.D.C. 2012).

determination that no segregation is possible.[69] The declarations must provide the relator a ""'"meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding."'"'"[70]

Frakes did not argue that confidential portions of the withheld documents are not segregable from nonexempt portions. Frakes instead made the argument, rejected above, that the documents were by definition wholly exempt from disclosure. Although relators properly raised the issue, the district court made no findings on the issue of segregability. Rather, the district court conducted a different analysis by distinguishing the withheld records between those which identified a team member on their face and those which did not. This left unaddressed the argument raised by relators that under the public records statutes nonexempt portions of the purchase orders and chemical analysis reports should be disclosed.

Appellate courts may address the issue of segregability on their own or may remand the matter to the district court to make findings on the issue.[71] Here, it is clear that Frakes has proved that an exemption applies to the names of execution team members as well as any of their identifying information, such as that person's official title or contact information. However, we find nothing in our record on appeal which suggests that an exemption applies to the portions of the purchase orders and chemical analysis reports which do not identify an execution team member, and there is no evidence that the exempt portions of the records are inextricably intertwined with nonexempt portions. Nonexempt portions of those records are not entitled to protection under § 83-967(2) and must be disclosed pursuant to § 84-712.06.

---

[69] See *Jarvik v. C.I.A.*, 741 F. Supp. 2d 106 (D.D.C. 2010).

[70] *American Civil Liberties Union of Northern California, supra* note 36, 202 Cal. App. 4th at 85, 134 Cal. Rptr. 3d at 495, quoting *Wilderness Soc. v. U.S. Dept. of Interior*, 344 F. Supp. 2d 1 (D.D.C. 2004).

[71] See *Juarez v. Dept. of Justice*, 518 F.3d 54 (D.C. Cir. 2008).

On remand, the district court must order Frakes to produce nonexempt portions of the purchase orders and chemical analysis reports after portions that may be withheld have been redacted, such as an execution team member's name, title, home or work address, telephone number, or email address.

## CONCLUSION

In cases Nos. S-18-604 through S-18-606, we dismiss the appeals for lack of jurisdiction. In cases Nos. S-19-027 through S-19-029, we affirm in part, and in part reverse and remand with directions to issue appropriate writs in conformity with this opinion.

APPEALS IN NOS. S-18-604 THROUGH S-18-606 DISMISSED.

JUDGMENTS IN NOS. S-19-027 THROUGH S-19-029 AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.

PAPIK, J., not participating.