Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/23/2022 08:05 AM CST

David H. Jacob, appellant, v. Nebraska
Board of Parole and Mark T. Langan,
parole board member, appellees.

___ N.W.2d ___

Filed December 23, 2022.    No. S-21-844.

1. **Summary Judgment: Appeal and Error.** An appellate court reviews a district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.

2. ____: ____. An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

3. **Summary Judgment.** In the summary judgment context, a fact is material only if it would affect the outcome of the case.

4. **Statutes: Appeal and Error.** Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.

5. **Rules of the Supreme Court: Pleadings: Appeal and Error.** An appellate court reviews a district court's denial of a motion to amend under Neb. Ct. R. Pldg. § 6-1115(a) for an abuse of discretion.

6. **Summary Judgment: Proof.** The party moving for summary judgment makes a prima facie case by producing enough evidence to show that the movant is entitled to judgment if the evidence were uncontroverted at trial. At that point, the burden of producing evidence shifts to the party opposing the motion.

7. **Summary Judgment.** Key factual propositions may be present for summary judgment purposes by reasonable inference, but conclusions based upon guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for purposes of summary judgment.

8. **Legislature: Statutes: Intent: Records.** In enacting the public records statutes, the Legislature has determined that the welfare of the people is

best served through liberal public disclosure of the records of the three branches of government.

9. **Records: Words and Phrases.** Disclosure, within the meaning of the public records statutes, refers to the exposure of documents to public view.

10. **Statutes: Records.** The public records statutes apply equally to all persons without regard to the purpose for which the information is sought and does not depend on who makes the request.

11. \_\_\_\_: \_\_\_\_. If any other statute expressly provides that particular information or records shall not be made public, it is not a public record.

12. **Mandamus: Proof.** A party seeking a writ of mandamus under Neb. Rev. Stat. § 84-712.03 (Cum. Supp. 2022) has the initial burden at trial to satisfy three elements: (1) The requesting party is a citizen of the state or other person interested in the examination of the public records, (2) the document sought is a public record as defined by Neb. Rev. Stat. § 84-712.01 (Reissue 2014), and (3) the requesting party has been denied access to the public record as guaranteed by Neb. Rev. Stat. § 84-712 (Reissue 2014).

13. **Records: Proof.** If the petitioner succeeds in proving a prima facie case for the writ, the burden then shifts to the public body opposing disclosure to show by clear and conclusive evidence that either Neb. Rev. Stat. § 84-712.05 (Cum. Supp. 2022) or Neb. Rev. Stat. § 84-712.08 (Reissue 2014) exempts the public records from disclosure.

14. **Probation and Parole.** Under Neb. Rev. Stat. § 83-1,111 (Cum. Supp. 2022), there are two fundamental components of a first-step parole review to determine whether the offender is reasonably likely to be granted parole: (1) the interview of the inmate and (2) a review of the inmate's record.

15. **Administrative Law: Records: Words and Phrases.** A public record is an investigatory record if (1) the activity giving rise to the document sought is related to the duty of investigation or examination with which the public body is charged and (2) the relationship between the investigation or examination and that public body's duty to investigate or examine supports a colorable claim of rationality.

16. **Statutes: Records: Words and Phrases.** A statute qualifies as an "other statute" under Neb. Rev. Stat. § 84-712(1) (Reissue 2014) when the plain language of a statute makes it clear that a record, or portions thereof, is exempt from disclosure in response to a public records request.

17. **Statutes: Records: Appeal and Error.** An appellate court must narrowly construe statutory exemptions shielding public records from disclosure, which means that if there is a plausible construction of a statute favoring disclosure of public records, that construction will prevail.

18. **Statutes.** A statute is not to be read as if open to construction as a matter of course.

19. ____. Rules of interpretation are resorted to for the purpose of resolving an ambiguity, not of creating it.

20. **Probation and Parole: Legislature: Records.** By declaring in Neb. Rev. Stat. § 83-1,125.01(2) (Cum. Supp. 2022) that the contents of the individual file shall be confidential, the Legislature has declared they shall not be made public within the meaning of Neb. Rev. Stat. § 84-712.01(1) (Reissue 2014).

21. **Records.** The inquiry of whether a requested record is a public record focuses on the information or record sought.

22. **Courts: Justiciable Issues.** Courts do not address or dispose of abstract questions or issues that might arise in a hypothetical or fictitious setting.

23. **Declaratory Judgments.** The purpose of the Uniform Declaratory Judgments Act is to provide a procedure for the speedy determination of issues which would otherwise be delayed to the possible injury of the parties.

24. **Pleadings.** The mandated liberality in permitting amendments is generally when leave to amend is proposed at an opportune time and will be in the furtherance of justice.

25. **Pleadings: Appeal and Error.** Permission to amend pleadings is addressed to the sound discretion of the trial court; absent an abuse of that discretion, the trial court's decision will be affirmed.

26. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

27. **Effectiveness of Counsel.** A pro se party is held to the same standards as one who is represented by counsel.

Appeal from the District Court for Lancaster County: DARLA S. IDEUS, Judge. Affirmed.

David H. Jacob, pro se.

Douglas J. Peterson, Attorney General, and James A. Campbell, Solicitor General, for appellees.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FREUDENBERG, J.

## I. INTRODUCTION

A committed offender sought a writ of mandamus under the Nebraska public records statutes, specifically Neb. Rev. Stat. § 84-712.03 (Cum. Supp. 2022), compelling the Board of Parole and one of its officers to disclose the record of an informal, first-step parole review proceeding during which he was interviewed by two board members who ultimately found he was not reasonably likely to be granted parole. The district court granted summary judgment in favor of the respondents, reasoning the record of the review proceedings was part of the individual file deemed by statute to be confidential and, also, that it was part of the examination or investigation by a public body charged with duties of investigation or examination of persons, which may be withheld from disclosure. The offender appeals. We affirm.

## II. BACKGROUND

David H. Jacob is a committed offender serving an indeterminate sentence with the Department of Correctional Services. He became eligible for parole in 2015. Since 2015, the Board of Parole has conducted annual reviews pursuant to Neb. Rev. Stat. § 83-1,111 (Reissue 2014 & Cum. Supp. 2022). The reviewers have determined after each annual review that Jacob should be denied parole and deferred his case for later reconsideration. At issue in the current action is the record pertaining to a review by the Board of Parole that occurred on September 5, 2019 (Review).

### 1. NOTICE

Following the Review, the Board of Parole sent Jacob an Offender Board Review Notice (Notice). The Notice set forth that the Board of Parole, as a result of the Review, deferred Jacob's case for another review the following year.

The Notice described that in compliance with § 83-1,111 (Cum. Supp. 2022), as well as Neb. Rev. Stat. §§ 83-192 and

83-1,114 (Cum. Supp. 2022), the Board of Parole had reviewed Jacob's case in his presence. It set forth two reasons for its decision: (1) "The nature/circumstances of your offense(s) indicates that an early release would depreciate from the seriousness of your crime and promote disrespect for the law" and (2) "[d]ue to your prior criminal record." The Notice did not elaborate upon either of these reasons. The Notice recommended that Jacob follow the recommendations of his personalized plan.

## 2. Public Records Written
### Request and Response

In response, Jacob sent a formal request to the Board of Parole pursuant to Neb. Rev. Stat. § 84-712 (Reissue 2014) of the public records statutes, asking for a copy of the complete record of the Review. Jacob pointed out that such a record was required by § 83-1,111(1), wherein it states, "Any hearing and review shall be conducted in an informal manner, but a complete record of the proceedings shall be made and preserved." Further, Jacob recalled there was a "'Court reporter'" at the Review "transcribing what was said." Thus, he was "hereby requesting a copy of that transcribed 'record.'"

The Board of Parole responded with a letter signed by board member Mark T. Langan, stating that no verbatim transcription is made for informal board reviews. In any case, according to the Board of Parole, the records developed and maintained in connection with board reviews are generally exempt from the public records statute by virtue of Neb. Rev. Stat. § 84-712.05(5) (Cum. Supp. 2022) and they are specifically exempt pursuant to Neb. Rev. Stat. § 83-1,125.01(2) (Cum. Supp. 2022).

## 3. Petition for Public Records
### Writ of Mandamus

On January 16, 2020, Jacob filed a verified petition for a writ of mandamus pursuant to § 84-712.03(a), requiring the Board of Parole and board member Langan, together referred

to herein as the "Board," to produce a copy of the records of the Review. Jacob also requested that the Board provide him with a copy of his "'prior criminal record'" for the court to review in camera. He specified that he was not seeking any parole proceedings orders and notices, which are exempted from public disclosure pursuant to § 83-1,125.01(1)(m).

Jacob described the Review as being in front of two members of the Board of Parole. Jacob alleged that, at the Review, there was a microphone positioned in front of him and there was a court reporter present who kept a record of what was said. Jacob implied he was making the request because one of the reasons in the Notice for denying parole was his prior criminal record—and he did not have a criminal record other than the charges for which he is presently incarcerated. Furthermore, Jacob alleged there was no discussion at the Review of any prior criminal record.

## 4. Board's Answer

The Board resisted the writ. In its answer, the Board stated it "[l]ack[ed] knowledge of whether Jacob has a criminal record in addition to his three convictions for second degree murder." It admitted there was no discussion of any prior criminal record in the Review, explaining that the only crimes discussed at the Review were the three convictions for which he was incarcerated.

The Board denied that a court reporter was present at the Review or that any verbatim record of the Review was made. Although the Board admitted § 83-1,111(1) requires it to maintain a complete record of the review, it noted the statute does not require the record include an audio recording or verbatim transcript. Furthermore, insofar as the public records statutes are concerned, the Board asserted its obligations are limited to disclosure of existing public records and do not envision the creation of records that do not exist. It asserted the court should dismiss the petition on the grounds that there is no document to provide to Jacob.

The Board alternatively asserted that to the extent any documents providing a summary or recording of the review exist, they were not required to produce it. In this regard, the Board asserted, first, that such record was part of Jacob's "individual file," confidential under § 83-1,125.01(2), and therefore not a public record as defined by Neb. Rev. Stat. § 84-712.01 (Reissue 2014). The Board asserted the list in § 83-1,125.01(1) of what shall be included in the "individual file" was not exclusive of what was properly contained therein. Second, the Board asserted that such record was developed as part of its "'duties of investigation or examination'" and "'constitute a part of the examination [or] investigation.'" Therefore, it may be withheld from the disclosure pursuant to § 84-712.05(5).

The Board did not specifically assert in its answer that it had already provided Jacob with its complete record of the Review.

### 5. Case Progression and Motion to Amend Petition

At a hearing on September 18, 2020, the court set a deadline for completion of discovery within 90 days. Trial was set for February 24, 2021.

On December 30, 2020, almost 1 year after filing his petition, Jacob moved to amend his petition to add a prayer for relief for a declaratory judgment of his rights under the provision in § 83-1,111(1), describing the obligation to make a complete record of the review proceedings. His proposed amended pleading was identical to the original petition except for the addition of a prayer for declaratory judgment "for both a construction of the validity of Neb.Rev.Stat. §83-1,111(1) and a declaration of the Relator's rights and status under the portion of that statute" providing that a complete record of the proceedings shall be made and preserved.

The Board objected to the amendment on the basis of undue delay. At the hearing on the motion to amend, Jacob explained

he wanted to "waive the trial altogether and move to just a declaratory judgment." Jacob said he had come to understand during discovery that the Board of Parole does not make what Jacob considered to be a "complete record" of review proceedings. "So, there's really no need for a trial to say we have to compel them to make a complete record. They don't have one." Instead, he wanted the court to "make the statement or make a definition, what does it mean to have a complete record."

The Board argued there appeared to be no dispute of fact pertaining to the underlying petition. Although Jacob could bring a separate action for declaratory judgment if he wished to, they were all too "far down the road into the case" for an amendment not to prejudice them. According to the Board, Jacob should have known at least a year before of any facts giving rise to the declaratory judgment action.

The court denied the motion to amend on the grounds that at such a late stage in the litigation, it was not appropriate to add a declaratory judgment claim to the petition for a writ of mandamus. The court stated it agreed with the parties that a writ of mandamus was "not a good option because there's no record. . . . I can't order somebody to produce something that doesn't exist . . . ." It also agreed that "whether the parole board is — is legally required to do something that is different . . . would be a better subject of a declaratory judgment." Nevertheless, it concluded, "[A]t this stage, I think that . . . needs to be a separate action."

## 6. CROSS-MOTIONS FOR SUMMARY
### JUDGMENT AND ARGUMENTS

Although Jacob initially indicated at the hearing on his motion to amend that he might dismiss the petition for a writ of mandamus, he instead filed a motion for summary judgment in his mandamus action. The Board submitted a cross-motion for summary judgment.

Jacob asserted in his motion that a complete record of the Review, containing pertinent information, was made and is

maintained in a State database. He asserted he was entitled to a copy of whatever information was contained in the State database pertaining to the Review, except for its orders and notices.

Jacob argued that such information was compiled as part of the Board of Parole's administrative functions and was not an investigative record as described by § 84-712.05(5). He also argued that because § 83-1,125.01(2) does not require that a record of review proceedings be kept in the inmate's individual file, it did not fall under the confidentiality requirements of § 83-1,125.01.

Jacob claimed that having access to the review records was necessary to vindicate his due process rights and liberty interest pertaining to the parole review procedures. At the hearing on the motions for summary judgment, Jacob pointed out it was undisputed that something the Board characterized as a "complete record" was made. He concluded, "What is exactly in there, I don't know, but . . . I just want a copy of it."

The State, in its motion for summary judgment, reiterated its argument that under § 83-1,125.01(3), the contents of an individual file are confidential and cannot be accessed by any person under the jurisdiction of the Board of Parole. Further, it claimed the record was developed as part of its investigation or examination of Jacob's suitability for parole and therefore exempt from public disclosure under § 84-712.05(5).

At the hearing, the Board pointed out some confusion about what Jacob was requesting and asserted that to the extent any requested records existed, the Board had already disclosed them to Jacob. The Board elaborated it had originally understood Jacob wanted a verbatim transcription of the Review which, undisputedly, did not exist. Although it later became clear Jacob wanted whatever record was produced as a result of the Review, the Board argued it was also undisputed that such complete record was contained in the Notice, which had been sent to Jacob. The Board argued that to the extent Jacob was asking for anything more than that, either

it was not a public record, because § 83-1,125.01(3) deems it confidential, or it is exempt under § 84-712.05(5). In sum, the Board argued there was no genuine issue that Jacob was unable to make a prima facie case for a public records writ of mandamus.

## 7. Exhibits

Jacob and the Board jointly submitted the same exhibits in support of their respective motions for summary judgment. All exhibits were received.

A staff assistant for the Board of Parole, who was charged with being present for and making a record of parole reviews, averred she was the only employee of the Board of Parole present for the Review. She averred further, "In compliance with . . . § 83-1,111(1), a complete record of the proceeding was made and preserved by entering pertinent information into a State maintained database," which is the Parole Information Management System (PIMS). In accordance with its normal procedures for informal reviews, no audio, video, or stenographic recording was made of the review.

The staff assistant averred that "[f]ollowing any informal parole review, an Offender Board Review Notice is generated from PIMS and sent to the [inmate]," and that notice "contains all of the pertinent information entered into PIMS." Accordingly, the Notice to Jacob "contains all of the pertinent information entered in PIMS, the State maintained database, related to the Parole Board's in-person informal parole review of [Jacob] on September 5, 2019."

Another employee of the Board of Parole, who is the "point-person" for PIMS, averred PIMS is the "central repository for official information related to individuals who may be considered for release on parole" and "contains the individual file maintained for each candidate for parole, including the Offender Board Review Screen." "The Offender Board Review Screen is used to input pertinent information when the Board conducts an in-person informal review of an incarcerated

individual." The notice sent to inmates of the review panel's decision "contains all of the pertinent information entered in PIMS."

## 8. Summary Judgment
### in Favor of Board

The district court granted the Board's motion for summary judgment and denied Jacob's motion for summary judgment. The court summarized that both parties agreed a record of some type was created and the question was whether Jacob was entitled to it. The court concluded Jacob was not entitled under the public records statutes to the record.

### (a) Not Public Record

The court reasoned that whatever the record created of the first-step review was, it would be part of an inmate's individual file and thus confidential through the mandate of § 83-1,125.01(2). Therefore, it was not a public record. The court noted the Board of Parole must consider a "litany of factors" before deciding if the offender is reasonably likely to be paroled. It observed that § 83-1,125.01(1) lists 18 types of records that are to be part of an "individual file." It found most pertinent subsection (1)(p), under which the individual file shall include, when available and appropriate, "[o]ther pertinent data concerning [the inmate's] background, conduct, associations, and family relationships."[1]

A "first-step review," the district court explained, necessarily involves the inmate's background, conduct, associations, and family. The first-step review also, said the district court, involves consideration of the factors in § 83-1,114(2), which provides, "In making its determination regarding a committed offender's release on parole, the board . . . shall take into account" each of the 15 factors set forth therein. These include, among other things, the offender's personality, ability and

---

[1] § 83-1,125.01(1)(p).

readiness to assume obligations and undertake responsibilities, intelligence and training, the adequacy of the parole plan, and a catch-all for "[a]ny other factors the board determines to be relevant."

## (b) Investigatory Records Exception

In denying Jacob's petition for a writ of mandamus, the court also reasoned that the record at issue in Jacob's petition fell within the investigatory records exception of § 84-712.05(5). The court noted the Board of Parole is charged with examining prisoners' fitness to be released and, as part of this review, the parole board members had a statutory duty to examine Jacob's file and interview him, which they did. Thus, the activity from which the record arose was related to the agency's duty of investigation or examination and there was a rational relationship between the investigation or examination actually conducted and its legal duty to investigate or examine. Jacob appeals.

## III. ASSIGNMENTS OF ERROR

Jacob assigns that the district court erred by (1) denying his request to amend his petition to allege an action for declaratory judgment and (2) granting the Board summary judgment on the grounds that the record of the Review was an investigatory record under § 84-712.05(5) and part of his individual file deemed confidential under § 83-1,125.01.

## IV. STANDARD OF REVIEW

[1-3] An appellate court reviews a district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.[2] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine

---

[2] *Kaiser v. Allstate Indemnity Co.*, 307 Neb. 562, 949 N.W.2d 787 (2020).

issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[3] In the summary judgment context, a fact is material only if it would affect the outcome of the case.[4]

[4] Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.[5]

[5] An appellate court reviews a district court's denial of a motion to amend under Neb. Ct. R. Pldg. § 6-1115(a) for an abuse of discretion.[6]

## V. ANALYSIS

Jacob argues on appeal that the court should have granted his petition for a writ of mandamus that would compel the Board to release to him whatever record was contained on PIMS documenting the Review. He also argues the district court erred by denying his motion to amend the petition to add a request for a declaratory judgment on the meaning of "complete record" under § 83-1,111(1), as applied to parole review proceedings, and on whether the Board complied with its duty to make a "complete record" of the Review.

### 1. Petition for Public Records
### Writ of Mandamus

[6,7] We first address whether the court erred in granting summary judgment in favor of the Board with respect to the petition for a public records writ of mandamus. The party moving for summary judgment makes a prima facie case by producing enough evidence to show that the movant is entitled to judgment if the evidence were uncontroverted at

---

[3] *Elbert v. Young*, 312 Neb. 58, 977 N.W.2d 892 (2022).

[4] *Peterson v. Homesite Indemnity Co.*, 287 Neb. 48, 840 N.W.2d 885 (2013).

[5] *State ex rel. BH Media Group v. Frakes*, 305 Neb. 780, 943 N.W.2d 231 (2020).

[6] *Williams v. State*, 310 Neb. 588, 967 N.W.2d 677 (2021).

trial.[7] At that point, the burden of producing evidence shifts to the party opposing the motion.[8] In reviewing the grant of a motion for summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, giving that party the benefit of all reasonable inferences deducible from the evidence.[9] Key factual propositions may be present for summary judgment purposes by reasonable inference,[10] but conclusions based upon guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for purposes of summary judgment.[11]

[8-10] In enacting the public records statutes, the Legislature has determined that the welfare of the people is best served through liberal public disclosure of the records of the three branches of government.[12] Section 84-712(1) of the public records statutes provides, "Except as otherwise expressly provided by statute, all citizens of this state and all other persons interested in the examination of the public records as defined in section 84-712.01 are hereby fully empowered and authorized to (a) examine such records, and . . . obtain copies of public records . . . ." Disclosure, within the meaning of the public records statutes, refers to the exposure of documents to public view.[13] The public records statutes apply equally to all persons without regard to the purpose for which the information is sought and does not depend on who makes the request.[14]

---

[7] See *Ag Valley Co-op v. Servinsky Engr.*, 311 Neb. 665, 974 N.W.2d 324 (2022).

[8] See *id.*

[9] *Kozal v. Snyder*, 312 Neb. 208, 978 N.W.2d 174 (2022).

[10] *Hughes v. School Dist. of Aurora*, 290 Neb. 47, 858 N.W.2d 590 (2015).

[11] *Darrah v. Bryan Memorial Hosp.*, 253 Neb. 710, 571 N.W.2d 783 (1998).

[12] *State ex rel. BH Media Group v. Frakes, supra* note 5.

[13] *Id*.

[14] See *id.*

[11] Pursuant to § 84-712.03, "Any person denied any rights granted by sections 84-712 to 84-712.03 may elect to . . . (a) [f]ile for speedy relief by a writ of mandamus in the district court . . . ." Section 84-712.07 provides that such a person who has been denied access to a public record may file for a writ of mandamus under § 84-712.03 whether or not any other remedy is also available.[15]

A "public record" is defined as follows:

> Except when any other statute expressly provides that particular information or records shall not be made public, public records shall include all records and documents, regardless of physical form, of or belonging to this state, any county, city, village, political subdivision, or tax-supported district in this state, or any agency, branch, department, board, bureau, commission, council, subunit, or committee of any of the foregoing. Data which is a public record in its original form shall remain a public record when maintained in computer files.[16]

Thus, if "any other statute expressly provides that particular information or records shall not be made public,"[17] it is not a public record.[18]

Section 84-712.05 of the public records statutes provides a list of records that, while falling generally under the definition of public records, "may be withheld from the public by the lawful custodian of the records" "unless publicly disclosed in an open court, open administrative proceeding, or open meeting or disclosed by a public entity pursuant to its duties." This list includes, under § 84-712.05(5), records developed or received by public bodies charged with duties of investigation or examination and which constitute part of such examination or investigation:

---

[15] See *State ex rel. Unger v. State*, 293 Neb. 549, 878 N.W.2d 540 (2016).

[16] § 84-712.01.

[17] *Id.* See, also, § 84-712(1).

[18] See *State ex rel. Unger v. State, supra* note 15.

Records developed or received by law enforcement agencies and other public bodies charged with duties of investigation or examination of persons, institutions, or businesses, when the records constitute a part of the examination, investigation, intelligence information, citizen complaints or inquiries, informant identification, or strategic or tactical information used in law enforcement training . . . .

[12,13] Pursuant to these public records statutes, a party seeking a writ of mandamus under § 84-712.03 has the initial burden at trial to satisfy three elements: (1) The requesting party is a citizen of the state or other person interested in the examination of the public records, (2) the document sought is a public record as defined by § 84-712.01, and (3) the requesting party has been denied access to the public record as guaranteed by § 84-712.[19] These three elements prove a prima facie case for a writ of mandamus for the release of public records. If the petitioner succeeds in proving a prima facie case for the writ, the burden then shifts to the public body opposing disclosure to show by clear and conclusive evidence that either § 84-712.05 or § 84-712.08 exempts the public records from disclosure.[20]

[14] It is undisputed that the Review at issue in Jacob's petition was a first step in the parole review process.[21] The Review was not a public hearing, which is the second step of the process,[22] wherein the offender may present evidence, call witnesses, and be represented by counsel.[23] Under § 83-1,111, there are two fundamental components of a first-step parole review to determine whether the offender is reasonably likely

---

[19] See *State ex rel. BH Media Group v. Frakes, supra* note 5.

[20] See *id.*

[21] See *Ditter v. Nebraska Bd. of Parole*, 11 Neb. App. 473, 655 N.W.2d 43 (2002).

[22] See *id.*

[23] § 83-1,111(1).

to be granted parole: (1) the interview of the inmate and (2) a review of the inmate's record. Section 83-1,111 describes that, in the first-step review, "[a] committed offender serving an indeterminate sentence under which he or she may become eligible for parole shall be interviewed and have his or her record reviewed by two or more members of the Board of Parole . . . ." Section 83-1,125.01 provides that "the Board of Parole and the Division of Parole Supervision" may maintain an "individual file" for each person who is under the jurisdiction of the Board of Parole. Section 83-1,125.01(2) requires that "[a]ny decision concerning release on or revocation of parole or imposition of sanctions shall be made only after the individual file has been reviewed."

[15] The interview described by § 83-1,111 as part of a first-stage parole review proceeding falls under the plain language of § 84-712.05(5), exempting it from disclosure under the public records statutes. A public record is an investigatory record if (1) the activity giving rise to the document sought is related to the duty of investigation or examination with which the public body is charged and (2) the relationship between the investigation or examination and that public body's duty to investigate or examine supports a colorable claim of rationality.[24] The two-part test provides a deferential burden-of-proof rule for a public body performing an investigation or examination with which it is charged but does not apply to protect material compiled ancillary to an agency's routine administrative functions or oversight activities.[25] The informal interview during the first-stage parole review is an "examination of persons," and any record of that examination is "a part of the examination."[26] With the mandatory language of § 83-1,111 that the inmate "shall be interviewed," the reviewers are "charged with duties of . . . examination

[24] *Evertson v. City of Kimball*, 278 Neb. 1, 767 N.W.2d 751 (2009).

[25] *Id*.

[26] § 84-712.05(5).

of persons."[27] Any notes or other record of the inmate's interview during a first-step parole review proceeding have a direct and rational relationship between the Board of Parole's activity giving rise to the record and the Board of Parole's statutory duty to interview the inmate.

Although it is the Board's burden to prove the exemption under § 84-712.05 and not Jacob's burden to prove such exemption as part of his prima facie case, the Board has demonstrated at the summary judgment hearing there is no genuine issue of material fact pertaining to this question. An interview was conducted during the Review. As a matter of law, pursuant to § 84-712.05, any record of the interview, unless disclosed in open court, may be withheld from the public by the lawful custodian of records.

As for the individual file containing Jacob's record reviewed during the informal first-step parole review, it is not, in the first instance, a public record. This is because § 83-1,125.01(2) is an "other statute" under § 84-712(1) that expressly provides individual files shall not be made public.

[16-19] A statute qualifies as an "other statute" under § 84-712(1) when the plain language of a statute makes it clear that a record, or portions thereof, is exempt from disclosure in response to a public records request.[28] An appellate court must narrowly construe statutory exemptions shielding public records from disclosure,[29] which means that if there is a plausible construction of a statute favoring disclosure of public records, that construction will prevail.[30] That said, a statute is not to be read as if open to construction as a matter of course.[31] Rules of interpretation are

---

[27] *Id.*

[28] *State ex rel. BH Media Group v. Frakes, supra* note 5.

[29] *Id.*

[30] See *id.*

[31] *State v. Frederick*, 291 Neb. 243, 864 N.W.2d 681 (2015).

resorted to for the purpose of resolving an ambiguity, not of creating it. [32]

Section 83-1,125.01(2) plainly provides that "[t]he contents of the individual file shall be confidential unless disclosed in connection with a public hearing and shall not be subject to public inspection except by court order for good cause shown." Additionally, § 83-1,125.01(2) states, "The contents of the file shall not be accessible to any person under the jurisdiction of the Board of Parole," with an exception for access by a person under the jurisdiction of the Board of Parole to the person's own medical records, "notwithstanding the fact that such medical records may be a part of his or her parole file." No other statutory exception for one's own records contained in the individual file are set forth by the statute.

In any case, the fact that § 83-1,125.01(2) provides for limited exceptions to this confidentiality does not render the individual file a public record for purposes of a public records writ of mandamus. Substantively, § 83-1,125.01(2) is similar to the statute that, in *State ex rel. Unger v. State*,[33] we held to "definitionally" signify the subject information was not, "as a matter of first principles," a public record subjecting it to a public records writ of mandamus.[34] The statute at issue in *State ex rel. Unger*, Neb. Rev. Stat. § 29-2261(6) (Cum. Supp. 2014), set forth the general rule that information in a presentence report is privileged and cannot be disclosed to anyone outside of the person listed in the statute and "'others entitled by law to receive'" such information.[35] We explained that others entitled by law to receive such information did not include anyone entitled to make a public records request, because "[i]f presentence reports were public records, the privilege in § 29-2261(6)

---

[32] *Adkisson v. City of Columbus*, 214 Neb. 129, 333 N.W.2d 661 (1983).

[33] *State ex rel. Unger v. State, supra* note 15.

[34] *Id.* at 557, 878 N.W.2d at 547.

[35] See, *id.* at 556, 878 N.W.2d at 546, quoting § 29-2261(6).

would be a mirage."[36] We held that the relator had failed to establish a prima facie claim because, through § 29-2261(6), the Legislature expressly made a particular type of record, a presentence report, privileged.[37]

[20] Likewise, through § 83-1,125.01(2), the Legislature expressly made a particular type of record, the individual file, confidential. If it is confidential, it is not public. Nothing in the relevant statutes suggests that because the individual file is reviewed at an informal, private first-step review proceeding, its contents become public records. To the contrary, § 83-1,125.01 expressly provides both that the individual file shall be reviewed before determining parole and that the individual file shall remain confidential unless disclosed in connection with a public hearing. Reading § 83-1,125.01(2) as a whole, we determine its meaning is plain. By declaring in § 83-1,125.01(2) that the contents of the individual file shall be "confidential," the Legislature has declared they "shall not be made public" within the meaning of § 84-712.01(1). Relatedly, § 83-1,125.01(2) is an "other statute" under § 84-712(1).

The real debate between Jacob and the Board is whether all of the information Jacob sought disclosure of through a public records writ of mandamus was properly contained within the confidential individual file. Section 83-1,125.01(1) sets forth a nonexclusive catalog of what information on the inmate the individual file "shall include, when available and appropriate," as follows:

> (a) Admission summary;
> (b) Presentence investigation report;
> (c) Classification reports and recommendations;
> (d) Official records of conviction and commitment along with any earlier criminal records;
> (e) Progress reports and admission-orientation reports;

---

[36] *Id.* at 556, 878 N.W.2d at 547.

[37] See *State ex rel. BH Media Group v. Frakes, supra* note 5.

(f) Reports of any disciplinary infractions and their disposition;

(g) Risk and needs assessments;

(h) Parole plan and parole placement and investigation worksheets;

(i) Decision guideline scores;

(j) Parole case plan;

(k) Parole progress reports and contact notes;

(l) Arrest and violation reports, including disposition;

(m) Parole proceedings orders and notices;

(n) Other documents related to parole supervision;

(o) Correspondence; and

(p) Other pertinent data concerning his or her background, conduct, associations, and family relationships.

Jacob points out that the record of parole review proceedings, per se, is not listed in the catalog of items set forth in § 83-1,125.01(1) of what shall be contained in the individual file. He argues the Board of Parole cannot shelter from disclosure information that would otherwise be public records simply by placing it in the individual file. The Board responds that the list in § 83-1,125.01(1) is not exclusive and that the Board of Parole has discretion in deciding what to include in the inmate's individual file.

[21] We cannot resolve this debate because it is merely theoretical. Other than a record of his interview, Jacob has failed to describe with any particularity what kind of information, not listed in § 83-1,125.01(1), he is seeking access to. By the time of the summary judgment hearing, Jacob could only describe he was seeking disclosure of whatever information, excluding orders and notices, the Board of Parole employees called the complete record of the Review. The inquiry of whether a requested record is a public record focuses on the information or record sought.[38] Without a more concrete articulation of what the information is from the individual file

---

[38] *Id.*

that Jacob seeks public disclosure of, no court can determine whether the Board of Parole abused its discretion in placing the information in the individual file and thereby improperly sheltered it from public disclosure.

[22] Courts do not address or dispose of abstract questions or issues that might arise in a hypothetical or fictitious setting.[39] Jacob presents only speculation that there might be some information in his individual file other than what is listed in § 83-1,125.01(1), any notes of the interview, and parole proceedings orders and notices, all of which, as a matter of law, the public is not entitled to under the public records statutes. We are cognizant that Jacob was not privy to what information is in the file, and thus, the reason for his public records request. Nevertheless, he had the opportunity during discovery to learn more generally what types of information were placed in his individual file. Jacob does not contest on appeal any discovery ruling that prevented him from moving beyond speculation concerning what categories of information allegedly were improperly placed in his individual file. He did not assert below that summary judgment was premature because he was not yet able to obtain such information.[40]

A jointly submitted affidavit set forth that the individual file maintained for each candidate for parole includes the "Offender Board Review Screen," which is used to input pertinent information when the Board conducts an in-person informal review of an incarcerated individual. Because the Legislature has declared that the contents of an offender's individual file are confidential, the affidavits jointly submitted at the summary judgment hearing were enough to make a prima facie case on behalf of the Board demonstrating it would be entitled to judgment if the evidence were uncontroverted at trial. The burden shifted to Jacob at the summary judgment hearing to show the

---

[39] See *Stewart v. Heineman*, 296 Neb. 262, 892 N.W.2d 542 (2017).

[40] See Neb. Rev. Stat. § 25-1335 (Reissue 2016).

information he sought from the individual file was not confidential because it should not have been there. He did not make such a showing.

The district court did not err in granting summary judgment in favor of the Board.

## 2. Leave to Amend

The district court also did not err by denying Jacob's motion to amend the petition to add a request for a declaratory judgment on the meaning of "complete record" under § 83-1,111(1) and whether the Board complied with its duty to make a "complete record" of the Review.

[23] First, we find no merit to Jacob's argument that Neb. Rev. Stat. § 25-21,149 (Reissue 2016), by stating that "[n]o action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for," deprives the trial court of the discretion conferred by § 6-1115(a) of the rules of pleading to determine whether leave to amend should be given. The purpose of the Uniform Declaratory Judgments Act is to provide a procedure for the speedy determination of issues which would otherwise be delayed to the possible injury of the parties.[41] Section 25-21,149, along with the other provisions of the Uniform Declaratory Judgments Act,[42] set forth the judicial power to make declaratory judgments and to what such judgments may extend.[43] Section 25-21,149 states in full:

> Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree

---

[41] *Mullendore v. School Dist. No. 1*, 223 Neb. 28, 388 N.W.2d 93 (1986).

[42] See Neb. Rev. Stat. §§ 25-21,149 to 25-21,164 (Reissue 2016).

[43] See *County of Douglas v. OEA Senior Citizens, Inc.*, 172 Neb. 696, 111 N.W.2d 719 (1961).

is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree. Any action or proceeding seeking a declaratory judgment that any tax, penalty, or part thereof is unconstitutional shall be brought within twelve months after such tax or penalty was levied or assessed.

This language does not address leave to amend.

While declaratory judgments may be unique in their forward-looking nature,[44] this attribute does not prevent the plaintiff from timely pleading the remedy. Amendment of a pleading to add a claim for declaratory judgment is, like the addition of other claims, governed by § 6-1115(a) of the rules of pleading.

Section 6-1115(a) provides in relevant part that in cases where a responsive pleading is permitted, before a responsive pleading is served, "[a] party may amend the party's pleading once as a matter of course . . . ." Further, § 6-1115(a) provides that after a responsive pleading is served, however, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires."

[24-26] With respect to the mandate under § 6-1115(a) that leave to amend "shall be freely given when justice so requires," we have said the denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the nonmoving party can be demonstrated.[45] But we have also explained that the mandated liberality in permitting amendments is generally when leave to amend is "proposed at an opportune time and

---

[44] See *Hauserman v. Stadler*, 251 Neb. 106, 554 N.W.2d 798 (1996).

[45] See, *McCaulley v. C L Enters.*, 309 Neb. 141, 959 N.W.2d 225 (2021); *InterCall, Inc. v. Egenera, Inc.*, 284 Neb. 801, 824 N.W.2d 12 (2012).

will be in the furtherance of justice."[46] "[A]t certain stages of a proceeding[,] a pleading may not be amended so as to change the issues and quantum of proof as to any issue."[47] Ultimately, permission to amend pleadings is addressed to the sound discretion of the trial court; absent an abuse of that discretion, the trial court's decision will be affirmed.[48] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[49]

It was not clearly untenable for the district court to have found there was an undue delay in bringing the motion to amend after discovery was closed and nearly a year had passed for the parties to prepare their legal arguments. While Jacob points out that he may incur new filing fees if he must bring an action for declaratory judgment separately, this is not an unjust result under the circumstances presented. Although the request for declaratory judgment and the public records request are largely based on the same historical facts, the request for declaratory judgment involves legal questions that are entirely different from those presented in a petition for a public records writ of mandamus. A public records writ of mandamus involves a public disclosure of a public record in the possession of a public body; it does not involve challenges based on the failure to make such a record. Any claim based on obligations to make a record is outside the public records statutes.

[27] In sum, allowing Jacob to amend the petition to seek declaratory judgment would have delayed the proceedings while the Board responded to an entirely different legal question. And Jacob presented no reason why he did not present

---

[46] *Bittner v. Miller*, 226 Neb. 206, 210, 410 N.W.2d 478, 481 (1987).

[47] *Id*.

[48] *Id.*

[49] *Simons v. Simons*, 312 Neb. 136, 978 N.W.2d 121 (2022).

this question sooner. Based on the written response of the Board of Parole to his written public records request, Jacob should have known before bringing the current action that the Board alleged the Notice contained its complete record of the Review. His petition could have sought, from the beginning, a declaratory judgment as to what a complete record means and whether the Board of Parole met its statutory obligations to create a complete record. That Jacob did not think to ask for this declaratory relief until almost a year had passed after filing the petition does not make the denial of the motion to amend unjust. A pro se party is held to the same standards as one who is represented by counsel.[50]

## VI. CONCLUSION

For these reasons, the district court did not err in denying Jacob's motion to amend, in denying Jacob's motion for summary judgment, and in granting summary judgment in favor of the Board.

Affirmed.

---

[50] *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022).